I .WOODARD, Judge.
In this workers’ compensation case, Captain Phillip Abate worked for the City of Abbeville Fire Department (the City) for 35 years. Shortly after a stroke-induced retirement, he began to suffer from heart problems which necessitated bypass surgery. Consequently, he filed a claim under La.R.S. 33:2581, the Firefighter’s *606 Heart and Lung Act. After a hearing on the merits, the workers’ compensation judge (WCJ) rendered judgment in his favor and awarded him weekly indemnity and medical benefits. The WCJ denied the City credit for medical expenses, paid under its group health plan, and ordered it and its insurer, the Louisiana Workers’ Compensation Corporation (LWCC), to pay Mr. Abate’s out-of-pocket expenses and unpaid medical bills related to the treatment of his heart condition. Finally, the WCJ ruled that the LWCC was arbitrary and capricious in failing to pay weekly compensation benefits in a timely manner and ordered it to pay a penalty of $1,000 and attorney’s fees of $2,000, as well as a penalty of $2,000 and attorney’s fees of $3,000 for failure to timely pay medical bills related to Mr. Abate’s heart condition. The City appealed. We affirm, in part.
‡ H* i' <!•
In 1964, Mr. Abate began working for the City as a firefighter. Within three years, he was promoted to captain. After 30 years of relatively good health, except for diabetes, he began to suffer from heart problems. In November of 1994, after undergoing a coronary angioplasty, physicians diagnosed him with coronary artery disease. Four years later, he suffered a diabetes-related stroke and remained on medical leave from that date until November 9, 1999, the date of his retirement.
On August 25, 2000, while working in his yard, he began experiencing chest pains. As a result of his previous angioplasty and the severity of his heart condition, he underwent bypass surgery on September 7, 2000. It prevented him from returning to work as a fireman. Consequently, he filed a claim under the Firefighter’s Heart and Lung Act for weekly indemnity and medical benefits. At the time of the hearing, he had not received any benefits from the City or its insurer.
| ¡The Heart and Lung Statute
La.R.S. 33:2581 is the applicable statute in the case at hand. The Firefighter’s Heart and Lung Statute [1] for firemen provides:
Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment.
(Emphasis added.)
Legislative intent implies that firemen are predisposed to vascular disease and heart problems,[2] but does not limit employment as having to be the sole cause of the disease or infirmity.[3] Additionally, this circuit has not excluded retirees in our reading of the statute “as long as the disease develops during the period *607 of employment.”[4] Accordingly, the burden shifts to the employer to prove that the disease did not develop during employment.[5] “[T]he employer must demonstrate a lack of causation and must do so with affirmative evidence.”[6] Lastly, in accordance with legislative intent, we have held La.R.S. 33:2581 to be applicable in workers’ 1 scompensation cases.[7] As such, once a disease or condition covered by the Firefighter’s Heart and Lung Act is found to exist, we look to the Workers’ Compensation Act for proper resolution.[8]

Medical Testimony

Mr. Abate’s medical evidence reflected that the heart disease, first, manifested itself in November 1994, when he had a coronary angioplasty. Thus, the disease manifested itself while he worked as a fireman.
Dr. Vernon Valentino, Mr. Abate’s cardiologist, first, saw him on August 25, 2000. He testified via deposition:
Q. Given the fact that he was 34 years as a fire fighter with the Abbeville fire department, can you rule out his occupational job activities as being a contributing factor in the heart disease that you found in August when you first examined him?
A. No.
Q. Does stress — as I understand your testimony — correct me if I am wrong. These factors that you listed that Counsel was referring to, that can precipitate or can aggravate or can increase heart disease and its development, those factors can all be aggravated by stress. Stress can increase those factors, which will increase the propensity for the development of heart disease?
A. Yes.
Q. In my notes you mentioned — ’after you gave him that last stress test, why would you not recommend that he go back to being a fireman after he had the last stress test with the ischemia?
A. Essentially, the finding of ische-mia on that, which is a fairly low level of exercise, only four and a half minutes, suggests that if he pushes himself too hard, he could have a heart attack.
^Furthermore, Dr. Valentino, also, testified that although Mr. Abate had blockage in 1994, it had increased significantly by the time that he had undergone the bypass. He declared:
Q. You can’t tell the amount or rate of change, but it’s your opinion that he had coronary heart disease when he stopped working in November of '98?
A. Yes.
Q. The extent of which you can’t tell us?
A. It is impossible to know.
[[Image here]]
A. Yes. The same sites show blockage from '04 to 2000.
(Emphasis added.)
On November 6, 2000, Dr. Valentino wrote a letter to Mr. Broussard stating, “At this time Mr. Abate is restricted from performing strenuous physical activity *608 which I should think would include fire fighting. However, approximately three months following his surgery, we would anticipate that he may return to his previous activities without restriction on a cardiac basis. I am not in a position to comment on any restrictions based on his stroke or neurologic status.” Mr. Abate’s condition, however, worsened over time. In a subsequent February 14, 2001 letter, Dr. Valentino noted the results of an office stress test which were positive for ische-mia. He declared, “On the basis of induci-bile ischemia, I believe he merits disability. Additional data we have obtained of January include a set of complete pulmonary function studies. The result of these studies do show that the patient has mild to moderate restrictive lung disease which could well be related to his years of work as a fireman.”
To the contrary, the City presented, only, a July 25, 2001 letter from LWCC to Dr. Joseph Kowalski, a cardiologist, regarding a second opinion. The letter, which was neither signed nor dated, bore handwritten answers stating that whomever completed the letter could not estimate the normal healing time for Mr. Abate’s injuries, that Mr. Abate had not reached the point of maximum medical recovery, and |sthat he considered Mr. Abate to be disabled at that time. As we are unaware who completed the document we cannot give it credence.
After reviewing the record, we conclude that the City failed to rebut the presumption that Mr. Abate’s heart disease developed during his period of employment and resulted from the nature of his occupation as a fireman.[9] Applying the manifest error standard, we find no error on the WCJ’s ruling that Mr. Abate is covered under the Heart and Lung Act and affirm this part of the judgment.
Indemnity Benefits
The City urges that the WCJ erred in awarding weekly indemnity benefits because Mr. Abate had retired, no longer earned wages, and proved no loss in earning capacity; therefore, he was ineligible to receive indemnity benefits, and the City, only, owed medical benefits. However, “[o]ur reading of the statute does not exclude retirees as long as the disease develops during the period of employment.”[10]
Based on the Workers Compensation Act, Mr. Abate’s injury, naturally, must be classified as an occupational disease, which is often treated differently from an accident and is subject to different provisions in the law. For example, when an accident occurs, the date of injury is identifiable. However, this is not so with an occupational disease which tends to develop over a long period of time. Logically, the time of the manifestation is the time to award compensation. With this common sense approach, we can determine that Mr. Abate’s disease first manifested itself in 1994 when he underwent the coronary angioplasty. Also, logically, the latest date for manifestations would be September 7, 2000, the date of the bypass surgery. Accordingly, we find that Mr. Abate is, indeed, entitled to indemnity benefits because of his injury, from the date of his coronary angioplasty until he returned to his employment and, again, from August 28, 2000, the date that a treadmill stress test showed suspicious blockage, forward. Furthermore, we find that, although he is entitled to temporary total disability benefits, he is not, thereafter, entitled to | fisupplemental earnings benefits. Since he *609 did retire in 1999, he effectively withdrew from the workforce.[11]
Since we have determined that Mr. Abate is entitled to temporary total disability benefits, we remand for further proceedings and the determination of the appropriate wage rate for his workers’ compensation benefits.
Out-of-PoCKet Expenses
 The WCJ found that Mr. Abate had significant out-of-pocket expenses due to the City’s failure to pay benefits. However, LWCC argues that, since its insured’s health insurer paid a portion of the medical bills, it is relieved from paying the out-of-pocket medical expenses that Mr. Abate incurred. After reviewing the record, we find that counsel did not produce any evidence, indicating whether the pharmaceutical charges were outstanding or, even, related to Mr. Abate’s heart condition. Only Mrs. Abate testified that she spoke with someone at Boudreaux’s Cash-way Pharmacy, who indicated that the charges were outstanding. Furthermore, this is hearsay. We recognize that the standard governing hearsay admissibility is more relaxed in workers’ compensation proceedings than it would be under the technical rules of evidence and so the admission, itself, of Mrs. Abate’s testimony was not erroneous.[12] Nonetheless, our law counterbalances this relaxed evidentiary standard by mandating that the WCJ’s factual findings be based on competent evidence.[13] There is no documentation or additional evidence in the record to corroborate Mi’s. Abate’s testimony. Consequently, we find that the WCJ’s award for Mr. Abate’s out-of-pocket expenses was not based on competent evidence and reverse this award.
Medical Expenses, Attorney’s Fees, and Penalties
Admittedly, LWCC failed to pay Mr. Abate’s medical bills. Initially, Mr. Abate demanded workers’ compensation benefits on December 6, 2000. Two months later, he requested them for the second time. On March 20, 2001, he requested that |7the medical bills, associated with his bypass surgery, be paid. However, the City refused to pay or provide medical benefits, required by La.R.S. 23:1201(E). Finally, Mrs. Abate testified that the group health insurer paid eighty percent of the charges associated with her husband’s heart condition; however, twenty percent remains outstanding. In Des-hotel,[14] we answered the same arguments LWCC makes in the instant case:
In its final assignment of error, the City asserts that the workers’ compensation judge committed manifest error by assessing penalties and attorney’s fees, when all of Deshotel’s medical bills have been paid by the City either through its workers’ compensation medical benefits or under the health and accident insurance which was fully funded by the City with no deductible amount paid by Deshotel. The City claims that it is entitled to a credit for those payments which have been paid by the health and accident insurance in accordance with La.R.S. 23:1212.
La.R.S. 23:1212 reads in part:
Payment by any person or entity, other than a direct payment by the employee, a relative or a friend of the employee, of medical expenses that are owed under this Chapter shall ex *610 tinguish the claim against the employer or insurer for those medical expenses.
A panel of this court in Alford v. Acadian Ambulance Service, Inc.[, 96-639 (La.App. 3 Cir. 11/6/96); 682 So.2d 9421 held that the extinguishment of a claim against the employer or insurer under La.R.S. 23:1212 is not a self-operative provision. In order for an employer or insurer to avail himself of the credit for payment, it must set forth the extinguishment of the claim as an affirmative defense and must prove the amount paid by submitting evidence at trial. Id. See Gentile v. Baton Rouge Medical Center[, 95-0348 (La.App. 1 Cir. 11/9/95); 665 So.2d 422], This holding reflects the general principal that extinguishment of any obligation in any manner must be set forth affirmatively as a defense. Id. See also La.Code Civ.P. art. 1005.
[[Image here]]
However, even if the City arguably expanded the pleadings by the stipulation, the City’s argument fails for another reason. The City, through its workers’ compensation insurer, refused to pay or provide medical benefits as is required by La.R.S. 23:1201(E). It is of no moment that a different insurance ultimately provided the payment, that the employee had no out of pocket expenses, or that the underlying Isobligation for the expenses was extinguished. The evidence supports the finding that medical benefits remained unpaid under the laws of workers’ compensation. Therefore, we find no error in the determination that the City failed to pay the bills bringing it under the penalty provision of La.R.S. 23:1201. Neither do we find clear error in the determination that the claim was not reasonably controverted.
(Citations omitted.)
Regarding the remaining medical benefits, the evidence supports the finding that, under the laws of workers’ compensation, medical benefits remained unpaid. Furthermore, we conclude that LWCC and the City did not prove the amount paid, by submitting affirmative evidence, at trial. Therefore, it did not extinguish the claim.
Accordingly, we find no error in the determination that the City failed to pay Mr. Abate’s medical expenses, which brings it under the penalty provision of La.R.S. 23:1201. The decision of whether to award penalties and attorneys’ fees is a factual determination and should not be disturbed on appeal unless clearly wrong.[15] Thus, we affirm the attorney’s fees and penalties incurred for failing to timely pay medical benefits, as well as the attorney’s fees and penalties for failure to pay weekly indemnity benefits.
Lastly, the City urges that the WCJ ruled that it was entitled to a credit for medical expenses, paid under its group health insurance plan; however, she left that out of her written reasons for judgment. As oral reasons are not binding, we must adhere to the four corners of the judgment.[16]
CONCLUSION
Mr. Abate worked for the City of Abbe-ville Fire Department for 35 years. One year, after suffering a stroke, he stopped working and retired. In 2000, he underwent a coronary bypass surgery for which he filed a claim, seeking workers’ compen *611 sation weekly indemnity benefits, as well as medical benefits.
After the hearing, the WCJ ruled in his favor. We affirm the WCJ’s ruling, entitling him to the benefits under the Heart and Lung Act, weekly indemnity benefits |fland medical benefits. Also, we affirm the WCJ’s ruling that the City could not receive a credit. However, we reverse the award of out-of-pocket expenses because the Abates failed to provide any evidence, proving that they had incurred such expenses. Lastly, we affirm the attorney’s fees and penalties incurred for failing to timely pay medical benefits and failure to pay weekly indemnity benefits. We cast the costs for this appeal against the Defendants/Appellants.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. La.R.S. 33:2581.

. McCoy v. City of Shreveport Fire Dep't, 649 So.2d 103 (La.App. 2 Cir.1995).

. City of Jennings v. Deshotel, 99-1232 (La.App. 3 Cir. 2/2/00); 758 So.2d 269.

. Attaway v. City of Natchitoches, 94-813 (La. App. 3 Cir. 2/1/95); 651 So.2d 306, 307.

. Rothell v. City of Shreveport, 626 So.2d 763 (La.App. 2 Cir. 1993), writ denied, 634 So.2d 379 (La. 1994), citing Vincent v. City of New Orleans, 326 So.2d 401 (La.App. 4 Cir.1975), writ refused, 329 So.2d 760 (La.1976).

. Deshotel, 758 So.2d 269.

. Meche v. City of Crowley Fire Department, 96-577 (La.App. 3 Cir. 2/12/97), 688 So.2d 697, writ denied, 97-632 (La.4/25/97), 692 So.2d 1088; Deshotel, 758 So.2d 269.

.Id.

. See Turner v. Turner, 455 So.2d 1374 (La.1984).

. Attaway, 651 So.2d at 307.

. Attaway, 651 So.2d 306.

. Chaisson v. Cajun Bag & Supply Co. et al., 97-1225 (La.3/4/98); 708 So.2d 375.

. La.R.S. 23:1317.

. Deshotel, 758 So.2d at 274-75.

. Spinks v. James Hutchins Farms, 98-811 (La.App. 3 Cir. 2/3/99); 736 So.2d 226, writ denied, 99-630 (La.4/23/99); 742 So.2d 888.

. Muller v. Muller, 94-281 (La.App. 3 Cir. 10/5/94); 643 So.2d 478.