# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-279


HOWARD MCCLURE

VERSUS

CITY OF PINEVILLE


************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2,
PARISH OF RAPIDES, NO. 03-06950,
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Michael G. Sullivan, Judges.


**REVERSED IN PART; AFFIRMED IN PART AS AMENDED.**

**Daniel E. Broussard, Jr.**
**Broussard, Bolton, Halcomb & Vizzier**
**Post Office Box 1311**
**Alexandria, Louisiana 71309**
**(318) 487-4589**
**Counsel for Plaintiff/Appellee:**
     **Mary McClure**

**Thomas J. Solari**
**Attorney at Law**
**Post Office Box 3731**
**Lake Charles, Louisiana 70602**
**(337) 433-6328**
**Counsel for Defendant/Appellant:**
     **City of Pineville**

**Gregory E. Bodin**
**Russell L. Mosely**
**Taylor, Porter, Brooks & Phillips**
**Post Office Box 2471**
**Baton Rouge, Louisiana  70821**
**(225) 387-3221**
**Counsel for Defendant/Appellant:**
  **Louisiana Workers' Compensation Corporation**

SULLIVAN, Judge.

This is a workers' compensation claim under the Heart and Lung Act, La.R.S. 33:2581. The employer and its workers' compensation carrier appeal the judgment rendered in favor of the claimant, which awarded her death benefits, funeral expenses, medical expenses, penalties, and attorney fees associated with the death of her husband, a retired fireman. For the following reasons, we reverse in part, amend, and affirm the judgment as amended.

***Facts***

Howard McClure was employed by the Pineville Fire Department (Pineville) for more than forty years. He retired in May 2000. In February 2003, he was diagnosed with lung cancer; he died as a result of this cancer in July 2003. His widow, Mary McClure, sought death benefits pursuant to the provisions of the Heart and Lung Act, La.R.S. 33:2581.

Pineville had workers' compensation coverage with Louisiana Municipal Risk Management Association (LMRMA) which was administered through Risk Management, Inc. (hereinafter referred to collectively as RMI) for the period January 1, 1987 through December 31, 1998. Louisiana Workers' Compensation Corporation (LWCC) provided Pineville workers' compensation coverage for the period January 1, 1999 through December 31, 2001. Beginning January 1, 2002, Pineville was self-insured; RMI was the administrator of its claims. On January 1, 2003, Pineville had coverage again with LMRMA/RMI.

After Mrs. McClure sought benefits, RMI filed a disputed claim, seeking a declaratory judgment that it was not responsible for the benefits sought.

Mrs. McClure filed a Reconventional Demand seeking death benefits from RMI[1] and LWCC. She then named Pineville as a defendant.

The WCJ tried Mrs. McClure's claims against Pineville and LWCC and took the matter under advisement. Thereafter, the WCJ issued oral reasons granting judgment in favor of Mrs. McClure and against LWCC and Pineville as follows:

> Death benefits at the rate of $226.09 per week from July 22, 2003, together with interest on each payment from February 24, 2004 or its due date until paid.
>
> Medical benefits incurred in connection with Mr. McClure's diagnosis and treatment of his lung cancer in the amount of $120,112.52 together with legal interest thereon from February 24, 2004 until paid;
>
> Funeral expenses in the amount of $5,000.00 together with legal interest thereon from February 24, 2004 until paid;
>
> Pineville and LWCC were each assessed with penalties for:
>
> | | |
> |---|---|
> | Failure to pay indemnity benefits | $2,000.00 |
> | Failure to pay funeral expenses | $2,000.00 |
> | Failure to pay medical expenses | $2,000.00 |

Pineville and LWCC were also each assessed with attorney fees in the amount of $5,000.00. The WCJ denied Mrs. McClure's claim for temporary total disability benefits from February 1, 2003 until July 22, 2003.

LWCC and Pineville appealed the judgment of the WCJ; Mrs. McClure answered the appeal, seeking additional attorney fees for work performed on appeal.

### Assignments of Error

LWCC assigns five errors:

---

[1]RMI filed a motion for summary judgment seeking to have all claims against it dismissed; the WCJ granted the motion. Appeals pertaining to that judgment are the subject of a separate opinion. *See McClure v. City of Pineville*, 05-1460 (La.App. 3 Cir. __/__/06), __ So.2d __.

1.    The WCJ erred in refusing to allow evidence of Mr. McClure's "last injurious" exposure.

2.    The WCJ erred in ruling that LWCC was responsible for the payment of death benefits, medical costs, and funeral expenses because there was no conclusive evidence presented at trial which proved that Mr. McClure's exposure during the period it provided workers' compensation coverage to the Pineville Fire Department caused his lung cancer.

3.    The WCJ erred in concluding that LWCC failed to rebut the presumption contained in the Heart and Lung Act, La.R.S. 33:2581.

4.    The WCJ erred in assessing LWCC with death benefits.

5.    The WCJ erred in assessing LWCC with penalties and attorney fees for its refusal to pay death benefits, medical expenses, and funeral expenses.

Pineville also assigns five errors:

1.    The WCJ erred in assessing Pineville with death benefits because the claimant failed to produce evidence that she was receiving any pecuniary support at the time of her husband's death.

2.    Alternatively, the WCJ erred in assessing Pineville with death benefits where the decedent was not receiving any wages at the time of his death.

3.    The WCJ erred in assessing penalties and fees against Pineville for resisting payments based on its litigation of an unsettled question of law.

4.    The WCJ erred in assessing penalties against both Pineville and LWCC, in contravention of limitations on the imposition of and the amount of penalties under La.R.S. 23:1201(F).

5.    The WCJ erred in increasing the total award of attorney fees by $2,500 when a clarification on the award was sought.

### Standard of Review

Factual findings of the WCJ should not be set aside unless they are manifestly erroneous or are clearly wrong. However, if the WCJ committed a reversible error of law or manifest error of fact, this court must ascertain the facts *de novo* from the record and render a judgment on the merits. *Bonnette v. Conoco, Inc.*, 01-2767 (La. 1/28/03), 837 So.2d 1219.

### Discussion

#### Heart and Lung Act

As previously stated, Mrs. McClure's claims are predicated on the Heart and Lung Act, La.R.S. 33:2581, which provides:

> Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment.

#### Last Injurious Exposure

LWCC stipulated that it provided Pineville workers' compensation coverage from January 1, 1999 through December 31, 2001. Its first assignment of error is based upon the following provision of the policy[2] LWCC issued to Pineville:

A. How This Insurance Applies

---

[2]LWCC proffered a copy of its policy at trial and indicated that it would provide a copy of the policy to the court for inclusion in the record; however, the policy is not contained in the exhibits compiled by the Office of Workers' Compensation, and the Exhibit List states "DO NOT HAVE THIS EXHIBIT" for the exhibit designation LWCC assigned to its policy. Therefore, it is unknown what subpart 1 of this provision indicates.

4

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

. . . .

2. Bodily injury disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

LWCC sought to introduce evidence of Mr. McClure's involvement in fighting fires during its policy period. It cites the case of *Beason v. Red Ball Oxygen Co., Inc.*, 29,894 (La.App. 2 Cir. 10/29/97), 702 So.2d 26, as support for its claim that Mr. McClure's last injurious exposure to conditions which could have caused or contributed to his lung cancer determines whether its policy provides coverage for Mrs. McClure's claim. In *Beason*, the claimant sought benefits for his occupational disease. He sued his employer and an insurer that provided workers' compensation coverage for a period of time during his employment. He claimed that each insurer which provided workers' compensation coverage during the time of his "injurious exposure" was solidarily liable for his claim. The defendant insurer's policy contained the same "last exposure" limitation LWCC's policy contains. The court observed that the insurance contract "constitutes the law between the parties and is enforced as written if the policy terms express the intent of the parties," and held that the insurer sued was not liable for the claim, as the claimant's last performance of repetitive arm, hand, and wrist movements, which contributed to his occupational disease, did not occur during the insurer's policy period. *Id*. at 28.

The occupational disease provision of the Workers' Compensation Act, La.R.S. 23:1031.1, gave rise to the last injurious exposure rule. *See Gales v. Gold Bond Bldg. Prod.*, 493 So.2d 611 (La.1986). The occupational disease provision entitles

5

employees disabled by occupational diseases to compensation as if they were injured in accidents in the course and scope of their employment. La.R.S. 23:1031.1(A). In *Gales*, the supreme court adopted the last injurious exposure rule, as opposed to apportioning fault among all employers and their insurers whose employment contributed to a workers' compensation claimant's occupational disease, explaining:

> The last injurious exposure rule avoids most of the problems of the apportionment [among employers] solution and because of this promotes efficient administration, speedy payment of claims, and, in most instances, provides the highest level of benefits for the claimant . . . . [W]e conclude that, as between the successive employers themselves, the solution of assigning liability according to the last injurious exposure most effectively furthers the principles and goals of workers' compensation laws.

*Id*. at 617 (citation omitted).

Counsel for Mrs. McClure objected to the introduction of last injurious exposure evidence. He argued that the Heart and Lung Act does not require a fireman who has been employed for more than five years to prove exposure to establish his claim for compensation. Therefore, exposure is not a coverage issue, and the insurer providing coverage on the fireman's last day of work provides coverage for the claim. Counsel further argued that the purpose of the Heart and Lung Act would not be served if a claimant's receipt of benefits was delayed while insurers and the employer fought over an issue which is not an issue for the claimant.

The WCJ agreed and refused to allow LWCC to introduce such evidence. The WCJ concluded that the language of the Heart and Lung Act rendered such evidence irrelevant and that the only relevant issue was Mr. McClure's being a fireman for more than five years. The WCJ reasoned that, because the Heart and Lung Act does not require such a fireman to establish any type of injurious exposure, LWCC knew or should have known when it issued its policies to Pineville that it would be

6

responsible for any workers' compensation claims made under the Heart and Lung Act by firemen who retired during its coverage period. The WCJ explained:

> When the insurer sold the policy and accepted the premium in payment for the policy, they were well aware of the fact that any and all fire fighters for the City [] may be diagnosed with a heart problem or a lung problem and that the statutory presumption would make them responsible for that type of coverage. . . . I'm not convinced that we're even dealing with a last injurious exposure case whatsoever under the Heart and Lung Statute, because it requires no proof of that for there to be coverage.

The Heart and Lung Act confers on firemen "all rights and benefits" afforded a claimant suffering from an occupational disease; however, as noted by the WCJ, it does not track the language of the occupational disease provision. La.R.S. 23:1031.1. Section B of this provision requires that occupational diseases be "due to causes and conditions characteristic of and peculiar to the . . . employment in which the employee is exposed to such disease." The Heart and Lung Act does not contain such a requirement. Instead, it classifies heart and lung ailments as being "connected with employment." La.R.S. 33:2581. This distinction was noted in *Vincent v. City of New Orleans*, 326 So.2d 401 (La.App. 4 Cir. 1975), *writ denied*, 329 So.2d 760 (La.1976), and led the court to conclude that the jurisprudence interpreting La.R.S. 23:1031.1 is not directly applicable to the Heart and Lung Act.

The Heart and Lung Act significantly simplifies a fireman's burden of proof in an occupational disease claim, especially a fireman who has been employed for more than five years. Requiring firemen to comply with the last injurious exposure rule imposes a burden of proof that the Heart and Lung Act does not, and imposition of such a requirement would hinder its principles and goals. For these reasons, we find no error with the WCJ's interpretation of the Heart and Lung Act, as it pertains to firemen who have been employed by the same employer for more than five years.

7

We do not believe this holding is in derogation of *Beason*, which held that policy provisions must be upheld if they "express the intent of the parties." The last exposure provision of LWCC's policy tracks the language of La.R.S. 23:1031.1 and jurisprudence interpreting it. The Heart and Lung Act does not track the language of the La.R.S. 23:1031.1 and, consequently, jurisprudence interpreting it is not necessarily pertinent to application of the Heart and Lung Act. *See Vincent*, 326 So.2d 401. Counsel for LWCC stated at trial that LWCC's policy was a statutory policy. We take this to mean that the policy is intended to provide an employer with workers' compensation coverage which satisfies the statutory requirements of the Workers' Compensation Act. Certainly, Pineville intended to purchase a policy which would satisfy *all* workers' compensation claims asserted against it. The Heart and Lung Act does not require evidence of injurious exposure; therefore, it is reasonable to conclude that Pineville did not intend to purchase a policy which required such evidence. It is also reasonable to conclude that if LWCC intended its statutory policy to satisfy Heart and Lung Act claims asserted against Pineville, it did not intend its policy to require such evidence.

### *Causation*

LWCC next argues that the WCJ erred in holding it responsible for benefits sought by Mrs. McClure because there was "no conclusive evidence" establishing that Mr. McClure's exposure to conditions during his employment "caused" his lung cancer. It also urges that the WCJ erred in finding that it did not rebut the presumption provided in La.R.S. 33:2581.

The Heart and Lung Act provides that once a fireman has established that the presumption is applicable, i.e., lung disease manifested after he had been employed

8

for five years, his employer must prove that the disease *did not develop* during his employment to relieve itself from the obligation of paying workers' compensation benefits. La.R.S. 33:2581. It does not require "conclusive evidence" that exposure during his employment caused his heart or lung condition as argued by LWCC. To successfully defend a claim under the Heart and Lung Act, the employer must produce affirmative evidence to establish that the fireman's heart or lung condition did not develop during his employment. *Abate v. City of Abbeville*, 02-297 (La.App. 3 Cir. 10/2/02), 827 So.2d 604, *writs denied*, 02-2648 (La. 1/31/03), 836 So.2d 67, 02-2718 (La. 1/10/03), 834 So.2d 440. This is an almost impossible burden because the employer must prove a negative, i.e., the fireman's heart or lung disease or infirmity "could *not* have resulted from his service as a firefighter." *Rothell v. City of Shreveport*, 626 So.2d 763, 766 (La.App. 2 Cir. 1993), *writ denied*, 93-3191 (La. 2/11/94), 634 So.2d 379.

LWCC presented the testimony of Dr. Gerald Militello to rebut the presumption. Dr. Militello opined that Mr. McClure's history of smoking cigarettes was more likely to have caused his lung cancer than his exposure to fire and smoke as a firefighter. He testified that Mr. McClure would have had to have fought fires on a daily basis for it to have had "a significant role with the disease process." While he believed cigarette smoking was "95% of the cause" of Mr. McClure's lung cancer, Dr. Militello could not rule out Mr. McClure's exposure to smoke as a fireman as playing a role in his cancer's development, and he testified that Mr. McClure's work as a firefighter "may have contributed some, but I think it played a very small role" in the development of his lung cancer. Mr. McClure's treating physician, Dr. Hafez

9

Al-Halawani, also testified that he could not rule out Mr. McClure's exposure to smoke in his employment as a contributing factor in the development of cancer.

Medical testimony to the effect that a firefighter's employment probably did not contribute to a fireman's lung disease, which is tempered by an acknowledgment that his employment cannot be ruled out as a contributing factor, is not sufficient to rebut the Heart and Lung Act's presumption. *Rothell*, 626 So.2d 763; *City of Jennings v. Deshotel*, 99-1232 (La.App. 3 Cir. 2/2/00), 758 So.2d. 269, *writ denied*, 00-663 (La. 4/20/00), 760 So.2d 1157; and *McCoy v. City of Shreveport Fire Dep't*, 26,181 (La.App. 2 Cir. 1/25/95), 649 So.2d 103. LWCC did not rebut the presumption of the Heart and Lung Act.

### *Death Benefits*

LWCC and Pineville contend that the WCJ erred in ordering the payment of death benefits to Mrs. McClure, citing *Arledge v. Dolese Concrete Co.*, 00-363 (La.App. 1 Cir. 6/6/01), 807 So.2d 876, *writ denied*, 01-2357 (La. 11/16/01), 802 So.2d 617, where the court held that survivors of retirees were not entitled to workers' compensation death benefits. The claimant in *Arledge* was found not to be "actually and wholly dependent" on her husband's "*earnings* for support at the time of [his] accident and death" as required by La.R.S. 23:1231 because the Arledges were receiving social security retirement benefits, not earnings from Mr. Arledge's employer, at the time of his death. Therefore, the court concluded that she was not entitled to death benefits.

This court declined to follow *Arledge* in *Johnson v. City of Lake Charles*, 04-455 (La.App. 3 Cir. 9/29/04), 883 So.2d 521, because the holding results in death

10

benefits being payable only when the employee is killed in the course of his employment. The court explained:

> To limit death benefit recovery to only those cases in which an employee is actually killed in a work-related accident would be to ignore the clear language of La.R.S. 23:1031.1(A), which grants a dependent employee who dies from an occupational disease the same recovery rights "as if [the] employee received personal injury by accident arising out of and in the course of his employment."

*Id.* at p. 525.

The court in *Johnson* further observed that survivors of firemen are entitled to benefits under the Heart and Lung Act "regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity," and that the decision in *Arledge* would result in many such survivors being left without a remedy simply because of how quickly their spouse's disease progressed and not because it was not employment-related.

Pineville urges us to reject this court's determination in *Johnson*. It argues that pertinent language in La.R.S. 23:1231 and La.R.S. 23:1251 establishes this court's error in *Johnson*. Section 1231 provides in part that death benefits are due to a legal dependent who is "actually and wholly dependent upon his earnings for support at the time of the accident and death." Section 1251 provides that a surviving spouse with whom the deceased employee is living at the time of accident or death is "conclusively presumed to be wholly and actually dependent upon the deceased employee." Pineville argues that this presumption does not relieve a surviving spouse who was living with the deceased employee at the time of his death of proving that she was "actually and wholly dependent *upon his earnings for support*."

The presumption of Section 1251 appears to fall short of satisfying the requirements of Section 1231, but La.R.S. 23:1255 clarifies that it does not. Section

11

1255 provides: "No compensation shall be payable under this Part to a surviving spouse unless he or she was living with the deceased spouse at the time of the injury or death, or was then actually dependent upon the deceased spouse for support." The jurisprudence interpreting Section 1255 makes it clear that a spouse living with the deceased at the time of death is conclusively presumed to be "wholly and actually dependent on the deceased for support." *See Haynes v. Loffland Bros. Co.*, 215 La. 280, 291, 40 So.2d 243, 247 (1949), where the court observed: "the courts have consistently held that both relationship and contribution to support at the time of the injury and death must be proved in all cases where dependency is *not* conclusively presumed." (Emphasis added.) Therefore, where dependency is conclusively presumed, relationship and contribution to support need not be proved.

The parties stipulated that Mrs. McClure was Mr. McClure's surviving spouse but not that she lived with him at the time of his death. Documentary evidence established that her residence was at the same address as Mr. McClure's residence, and we find that Mrs. McClure proved that she lived with Mr. McClure at the time of his death and that the conclusive presumption of La.R.S. 23:1251 applies to her. The WCJ did not err in awarding Mrs. McClure death benefits.

***Penalties and Attorney Fees***

LWCC and Pineville argue that the WCJ erred in casting them with penalties and attorney fees. LWCC complains that the WCJ wrongfully assessed penalties and attorney fees because the medical evidence did not establish that Mr. McClure's exposure to any condition of his employment during the period of its policy contributed to his cancer. For the reasons previously discussed herein under ***"Causation*,"** we find no merit to this contention. The jurisprudence interpreting the

12

Heart and Lung Act established long ago that the evidence LWCC relied on to rebut the presumption herein was insufficient. Its failure to pay Mrs. McClure's benefits was arbitrary and capricious, rendering it liable for penalties and attorney fees. La.R.S. 23:1201.

Pineville urges that the WCJ erred in assessing penalties and attorneys fees when an unsettled question of law is at issue. We do not agree. The decision in *Johnson* is the latest pronouncement on this issue by this court. And, as previously discussed, there is a long line of jurisprudence interpreting La.R.S. 23:1251 and 23:1255 which evidences the correctness of our decision in *Johnson*. This issue of law is not unsettled.

Pineville also contends that the WCJ erred in assessing separate penalties and attorney fees against it and LWCC. The WCJ found that because both the employer and its insurer were obligated, but failed to satisfy the obligations contained in the Heart and Lung Act, they were each liable for separate penalties and attorney fees.

La.R.S. 23:1201(F) provides for the assessment of penalties and attorney fees "against *either* the employer *or* the insurer, depending upon fault." The disjunctive "or" limits the assessment of penalties and attorney fees against the employer *or* the insurer, not both. La.R.S. 1:9. Accordingly, we find the WCJ erred in awarding penalties and attorney fees against LWCC and Pineville and reverse that portion of the judgment which assesses penalties and attorney fees against Pineville.

***Increased Award of Attorney Fees***

The WCJ initially awarded $7,500.00 in attorney fees. When a clarification was requested regarding the award, the WCJ increased the initial award of $7,500.00 in attorney fees to $5,000.00 against Pineville and $5,000.00 against LWCC.

13

Pineville assigns this as error. Our reversal of the assessment of attorney fees against Pineville renders this argument moot.

### *Attorney Fees for Appeal*

Mrs. McClure seeks an award for attorney fees for work performed on appeal. She is entitled to an increase in attorney fees in light of the additional time required of her counsel in defending this appeal. *Frith v. Riverwood, Inc.*, 04-1086 (La. 1/19/05), 892 So.2d 7. We award $2,500.00 in attorney fees to Mrs. McClure for work performed by her attorney on appeal.

### *Disposition*

The assessment of penalties and attorney fees against Pineville is reversed. The judgment is amended to award Mrs. McClure $2,500.00 in attorney fees for work performed on this appeal. The judgment is affirmed in all other respects. All costs of this appeal are assessed to LWCC.

**REVERSED IN PART; AFFIRMED IN PART AS AMENDED .**