MOORE, J.
 

 _JjThe City of Bossier City appeals a judgment of the Office of Workers’ Compensation awarding a former Bossier City firefighter, Roy Lee Colvin, medical expenses under the Firefighters’ Heart and Lung Act, La. R.S. 33:2581 (“the Act”). Colvin answers the appeal, seeking indemnity benefits, a penalty and attorney fee. For the reasons expressed, we affirm.
 

 Factual Background
 

 Colvin began his career with the Bossier City Fire Department in 1972. He worked several years as a firefighter before moving to the Fire Prevention Division. Both in operations and fire prevention he was exposed to much smoke. He ultimately became Chief of Fire Prevention and retired in June 1993 at a salary of $3,328 per month. At the time, he was very stressed, with chest pains and high blood pressure, but he retired mainly because it was advantageous under the former retirement system.
 

 Colvin then went to work for the Bossier Sheriffs Office, Corrections Division, driving inmates to work assignments. He continued to suffer with breathing problems, swollen legs, high blood pressure, hyperli-pidemia (excessive lipids in the blood), Type 2 diabetes and mild obesity. It never occurred to him that exposure to smoke while working as a firefighter years earlier might have contributed to his health condition.
 

 In early November 2003 Colvin had such a serious onset of chest pain and short breath that he went to the Willis Knighton emergency room. The cardiologist on duty, Dr. Michael Walton, diagnosed unstable angina; a heart catheter and echo-cardiogram showed severe blockage of all of Colvin’s major arteries. A cardiac surgeon, Dr. Laurence Hiller, performed |2a quadruple bypass. In spite of complications including COPD (chronic obstructive pulmonary disease), Dr. Walton felt the surgery initially yielded good results. Col-vin took three months to recuperate, using accumulated leave from the sheriff’s office, and then returned to work at the penal farm in a desk job coordinating inmate transportation.
 

 Colvin testified that while he was in the hospital, someone told him he could apply for benefits under the Act; in early 2004, he called the city’s risk manager, who “set it all up” with the third party workers’ compensation administrator, F.A. Richard & Associates (“FARA”). FARA began paying his doctor and pharmacy bills, including a CPAP (continuous positive air
 
 *1210
 
 way pressure) device to alleviate sleep apnea, cardio rehab at Willis Knighton, and mileage.
 

 Even with the surgery and rehab, Col-vin’s health problems persisted. He had to check into Willis Knighton in 2004 and 2006 with shortness of breath; tests showed diminished heart muscle function. He finally retired from the Sheriffs Office in February 2008, but drew his regular pay until September 18, 2008, using accumulated annual leave and two periods of catastrophic illness leave. His average weekly wage at the time was $1,009.
 

 Colvin testified that in early February 2008, he went to Wal-Mart to get one of his prescriptions refilled, but the cashier informed him that FARA would not pick up the tab. He called and found that FARA was no longer the city’s third party administrator. Since then, he has had to pay for his prescriptions out of pocket, and has received no reimbursement for mileage from his home in Benton to Willis Knighton South. He admitted |sthat he has never requested reimbursement from the city’s current third party administrator, identified in brief as Gallagher Bassett Services.
 

 Procedural History and Trial Evidence
 

 The city filed the instant disputed claim in February 2008, essentially requesting a declaratory judgment as to the cause of Colvin’s heart and lung disease and sleep apnea.
 

 Colvin filed a reconventional demand in March 2008, demanding indemnity benefits based on his average weekly wage with the Sheriffs Office and the resumption of all medical benefits under the Act. He also demanded the statutory penalty and attorney fee.
 

 The city filed an exception of prescription as to all claims.
 

 At trial in February 2009, Colvin testified as outlined above. He admitted that he had been a moderate smoker many years ago but quit before going to work for the Fire Department at age 29 in 1972 (in Willis Knighton records he said he quit in 1976). He also testified that in his current state of health, he could not return to any kind of employment. In addition, he had just turned 65 and applied for Social Security old-age benefits.
 

 Three of Colvin’s treating physicians testified by deposition. Cardiologist Dr. Walton, who began treating Colvin in November 2003, and cardiac surgeon Dr. Hil-ler, who performed the bypass operation, were unaware at the time that he had ever been a firefighter. In fact, they had never heard that firefighting was associated with heart disease until they were called to testify in this case. They ascribed Colvin’s condition to |4plaque buildup in the arteries, hypertension and diabetes. On cross-examination, Dr. Walton could not “rule out” 21 years of firefighting as a cause of coronary artery disease and COPD, and Dr. Hiller agreed that smoke can damage the lungs. The third expert, critical care physician Dr. Raghu Nathan, had treated Colvin for various problems since 1997. He testified that Colvin had “restrictive lung disease,” essentially a diminished lung volume, and that firefighting contributed to this and to COPD, but he had no opinion as to whether it caused his heart problems.
 

 Action of the WCJ
 

 In reasons for judgment rendered orally on March 31, 2009, the WCJ ruled that because Colvin worked for the Fire Department more than five years, the Act created a presumption that his heart or lung disease was caused by his employment. However, by the time of surgery in November 2003, Colvin knew that heart disease had manifested itself, and that it had disabled him, as he was moved to a sedentary job; and he had reasonable
 
 *1211
 
 grounds to believe it was occupationally related, as he made a claim with FARA for medical benefits. Even with this knowledge, Colvin did not file a disputed claim until March 2008. The WCJ therefore found that the claim for indemnity benefits was prescribed, while the claim for medical expenses was still valid because the city had continued to pay them until February 2008. Finally, the WCJ found that the city brought a legal and factual issue to trial, precluding the award of a penalty and attorney fee.
 

 |,.;The city has appealed, and Colvin has answered the appeal.
 

 Discussion: Causation
 

 By one assignment of error, the city urges the WCJ committed manifest error in finding Colvin’s heart condition causally related to his employment. It concedes that the Act creates a rebuttable presumption of causation in Colvin’s favor, but contends that it rebutted this with expert testimony, such as Dr. Hiller’s remark, “I’ve never seen any studies that correlated those two.” It argues that the utter absence of expert evidence to relate Colvin’s employment as a firefighter from 1972 to 1998 to his heart attack in 2003 distinguishes this from earlier cases finding causation, such as
 
 Coats v. City of Bossier City,
 
 31,164 (La.App. 2 Cir. 10/30/98), 720 So.2d 1283,
 
 writ denied,
 
 99-0019 (La.2/12/99), 738 So.2d 581, and
 
 Rothell v. City of Shreveport,
 
 25,182 (La.App. 2 Cir. 10/27/93), 626 So.2d 763. It also submits that the rebuttal evidence is stronger than in
 
 Gilliland v. City of Monroe,
 
 42,458 (La.App. 2 Cir. 10/10/07, 968 So.2d 270),
 
 writ denied,
 
 2007-2476 (La.3/7/08), 977 So.2d 908, which found no causation. The city concludes the award should be reversed.
 

 Colvin responds that the Act’s presumption of causation cannot be rebutted by evidence that is only equivocal.
 
 McCoy v. City of Shreveport,
 
 26,181 (La.App. 2 Cir. 1/25/95), 649 So.2d 103;
 
 McClure v. City of Pineville,
 
 2006-279 (La.App. 3 Cir. 12/6/06), 944 So.2d 795. Colvin urges the experts said only that they were
 
 unaware
 
 of any correlation between firefighting and heart disease, thus making their views equivocal and insufficient to rebut the presumption. He concludes that the finding of |ficausation was not plainly wrong.
 

 The Act provides as follows:
 

 § 2581. Development of heart and lung disease during employment in classified fire service; occupational disease.
 

 Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment.
 

 The Act creates a presumption that the nature of a firefighter’s work caused, contributed to, accelerated or aggravated his heart disease or infirmity which manifests itself after the first five years of employment.
 
 McCoy v. City of Shreveport, supra.
 
 Once the firefighter establishes that the presumption is applicable, the employer must then prove that the disease did not develop during his employment to relieve itself from the obli
 
 *1212
 
 gation of workers’ comp benefits.
 
 McClure v. City of Pineville, supra.
 
 To meet this burden, the employer must produce affirmative evidence that the firefighter’s heart or lung condition did not develop during his employment.
 
 McClure v. City of Pineville, supra,
 
 and citations therein;
 
 Rothell v. City of Shreveport, supra.
 

 |7On close review, we agree that the expert medical testimony was essentially neutral as to causation. Drs. Walton and Hiller professed no awareness that firefighting was a factor in heart or artery disease, though Dr. Hiller admitted that smoke inhalation can damage the lungs. Dr. Nathan positively ascribed Colvin’s restrictive lung disease to firefighting, but would state no view as to the cause of his heart disease. Standing alone, this evidence would probably have fallen short of proving that Colvin’s 21-year career in firefighting caused his heart and lung condition. However, the Act supplied a presumption of causation which the city was required to rebut. We do not view this record as rebutting that presumption. The WCJ was not plainly wrong to find causation; this assignment lacks merit.
 

 Prescription
 

 By answer to appeal, Colvin urges the WCJ erred in sustaining the exception of prescription as to indemnity benefits. He contends that the Act places no time limit on the development of the disease, and that a six-year-old claim was affirmed in.
 
 Coats v. City of Bossier City, supra.
 
 He also asserts that after his bypass, he sustained no loss of income until September 2008, and that his Sheriff’s Office salary can be treated as wages in lieu of compensation, as in
 
 Ray v. City of New Orleans,
 
 284 So.2d 83 (La.App. 4 Cir.),
 
 writ ref'd,
 
 286 So.2d 661 (1973). Still further, he urges that under R.S. 23:1314 A(l), his action for indemnity benefits was premature until he could allege “that he is not being paid or has not been paid[.]” Finally, he suggests that given the remedial nature of workers’ compensation, the court should resolve any conflict between the prescription statute, R.S. 23:1031.1 |8E, and the administrative statute, R.S. 23:1314, in favor of the claim, as the court apparently did in
 
 Butler v. Parish of Jefferson,
 
 06-669 (La.App. 5 Cir. 1/30/07), 951 So.2d 1218. By a second assignment of error, Colvin urges that his compensation rate should be based not on his average weekly wage when he retired from the Fire Department in 1993 ($768) but when he became disabled in 2008 ($1,009), for the maximum rate of $522.
 

 The city responds that courts routinely apply the prescription statute to claims under the Act.
 
 McElwee v. City of Bossier City,
 
 34,845 (La.App. 2 Cir. 12/6/00), 775 So.2d 588,
 
 writ denied,
 
 2001-0049 (La.3/9/01), 786 So.2d 737;
 
 Broussard v. Citgo Petroleum Corp.,
 
 02-895 (La.App. 3 Cir. 12/30/02), 834 So.2d 1282,
 
 writ denied,
 
 2003-0301 (La.4/4/03), 840 So.2d 1219. The city submits that the WCJ correctly applied the facts to R.S. 23:1031.1 E to reject the indemnity claim.
 

 The prescription of occupational disease claims in workers’ compensation is regulated by La. R.S. 23:1031.1 E:
 

 E. All claims for disability arising from an occupational disease are barred unless the employee files a claim as provided in this Chapter within one year of the date that:
 

 (1) The disease manifested itself.
 

 (2) The employee is disabled from working as a result of the disease.
 

 (3) The employee knows or has reasonable grounds to believe that the disease is occupationally related.
 

 All three elements must be satisfied before prescription begins to run on an occupational disease claim.
 
 Bynum v. Capital City Press,
 
 95-1395 (La.7/2/96), 676 So.2d 582;
 
 Lee v. Schumpert,
 
 36,733
 
 *1213
 
 (La.App. 2 Cir. 1/29/03), 836 So.2d 1214. Although the Act is not specifically incorporated into the workers’ compensation law, its provision of a service-related occupational injury is applicable to workers’ compensation cases.
 
 Coats v. City of Bossier City, supra; Johnson v. City of Lake Charles,
 
 2004-0455 (La.App. 3 Cir. 9/29/04), 883 So.2d 521.
 

 The city correctly shows that the time limitation of R.S. 23:1031.1 E applies to claims made under the Act.
 
 McElwee v. City of Bossier City, supra; Broussard v. Citgo Petroleum Corp., supra; Vincent v. City of New Orleans,
 
 326 So.2d 401 (La.App. 4 Cir.1975),
 
 writ ref'd,
 
 329 So.2d 760 (1976). The WCJ did not err in applying § 1031.1 E to this claim. The disease obviously manifested itself in November 2003 when Colvin’s chest pain grew unbearable and tests showed several blocked arteries; it disabled him for three months after surgery. Colvin’s candid admission that in the hospital someone told him he could make a claim under the Act, which he did in early 2004, created reasonable grounds for him to believe the disease was occupationally related.
 

 The fact that Colvin drew his Sheriffs Office wages until 2008 is immaterial. The jurisprudential concept of “wages in lieu of comp” to suspend prescription applies only to
 
 unearned
 
 wages.
 
 Dupaquier v. City of New Orleans,
 
 260 La. 728, 257 So.2d 385 (1972);
 
 Reeves v. Reeves Dirt Pit,
 
 606 So.2d 881 (La.App. 2 Cir.1992);
 
 Feyerabend v. Boomtown Casino,
 
 08-807 (La.App. 5 Cir. 2/25/09), 9 So.3d 228. Nothing in this record indicates that his salary as a sheriffs deputy was unearned. Moreover, after his surgery Colvin sustained a loss of three months’ wages; | Uleven though he was able to cover this with accumulated leave time, it was an allegation that would have satisfied the minimal pleading requirement of R.S. 23:1314 A(l).
 

 The WCJ was not plainly wrong to find that Colvin’s claim for indemnity benefits was prescribed. Because of this conclusion, we express no opinion as to Colvin’s second assignment of error, concerning his compensation rate. These assignments of error lack merit.
 

 Penalty and Attorney Fee
 

 By a final assignment of error, Col-vin urges the WCJ erred in failing to assess the statutory penalty of $2,000 and a reasonable attorney fee. He contends that the city did not reasonably controvert his claim and, in fact, subjected him to legal fees by filing a disputed claim.
 

 The city responds that it successfully showed that the indemnity claim was prescribed and that Colvin had never sought reimbursement of medical expenses from its current third party administrator; these facts were sufficient to defeat the claim for a penalty and attorney fee.
 

 Failure to provide payment of benefits will result in a penalty and attorney fee “unless the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.” La. R.S. 23:1201 F(2);
 
 McCarroll v. Airport Shuttle Inc.,
 
 2000-1123 (La.11/28/00), 773 So.2d 694;
 
 J.P. Morgan Chase v. Louis,
 
 44,309 (La.App. 2 Cir. 5/13/09), 12 So.3d 440. The phrase “reasonably controvert” means that the employer or insurer must have “some valid reason or evidence on which to base his denial of benefits.”
 
 Brown v. Tex-LA Cartage Inc.,
 
 98-1063 (La.12/1/98), 721 So.2d 885;
 
 J.P. Morgan Chase v. Louis, supra.
 
 Awards of penalties and attorney fees in compensation cases are essentially penal, and are intended to deter indifference and undesirable conduct by employers and their insurers toward injured workers.
 
 Trahan v. Coca Cola Bottling Co.,
 
 2004-0100 (La.3/2/05), 894 So.2d 1096;
 
 Langley v. Petro Star
 
 
 *1214
 

 Corp. of La.,
 
 2001-0198 (La.6/29/01), 792 So.2d 721. Penalties should not be imposed in doubtful cases, where a bona fide dispute exists as to the claimant’s entitlement to benefits.
 
 J.E. Merit Constructors Inc. v. Hickman,
 
 2000-0943 (La.1/17/01), 776 So.2d 435;
 
 J.P. Morgan Chase v. Louis, supra.
 

 We are sensitive to the fact that the
 
 city
 
 filed this disputed claim, even though it had been paying medical benefits for four years. While it is unusual for the employer to initiate the claims process, this is preferable to terminating benefits unilaterally — a decision that probably would have been viewed as arbitrary, capricious, and indifferent to the employee’s interest. In addition, the city raised a serious issue as to causation and showed that the indemnity claim was prescribed. On this record, the WCJ did not abuse its discretion in denying the claim for a penalty and attorney fee. This assignment lacks merit.
 

 Conclusion
 

 For the reasons expressed, the judgment is affirmed. All appellate filing fees have been prepaid; no further costs are assessed.
 

 AFFIRMED.