CARAWAY, J.
liA retired Monroe firefighter was denied Workers’ Compensation benefits under the Firefighter’s Heart and Lung Statute, La. R.S. 33:2581. He filed a disputed claim for compensation with the Office of Worker’s Compensation. The Workers’ Compensation Judge (“WCJ”) awarded medical benefits and reimbursement costs for out-of-pocket expenses relating to his heart condition, but denied penalties and attorney fees. This appeal solely concerns the denial of penalties and attorney fees. For the following reasons, we affirm.

Facts

Vernon McMillan (hereinafter “McMillan”), who is now 70 years old, was a City of Monroe (“City”) firefighter for 32 years. In 1999, four years after his retirement, he was denied benefits under the Firefighter’s Heart and Lung Statute, La. R.S. 33:2581. As a claim for lung damage, the prior litigation is relevant only since the City relied heavily in the present case upon the prior medical records as grounds for denying McMillan’s current heart-related claim. While McMillan complained of heart pains in some of these prior tests, his doctors’ reports, a stress test, and a chest x-ray did not find any heart irregularities at that time.
The facts of the current litigation occurred in 2009, almost 14 years after his retirement as a firefighter. On July 28, 2009, McMillan went to the St. Francis Medical Center emergency room complaining of chest pains. According to McMillan’s emergency room doctor, Dr. Greg Sampognaro, he presented with unstable angina blockage in his right coronary artery and | {.chronic blockage of a branch off of the right coronary artery. The following day, Dr. Sampognaro put in a stent to alleviate the arterial blockage. McMillan was released on July 30. Thereafter, McMillan contacted Michael Shore, the workers’ compensation administrator for the City, regarding his claim for benefits under the Heart and Lung Statute. The City ultimately denied coverage of his heart condition.
On March 9, 2010, McMillan filed a disputed claim for compensation with the Office of Worker’s Compensation. At the hearing, McMillan testified regarding his employment and health histories. He stated that he worked as a firefighter from August 1963 until December 1995. In his 32-year career, McMillan rose in the ranks from a private, to lieutenant, then captain, and finally to a District Chief, the position he held for 10 years prior to retiring. He *871 testified that firefighters did not wear masks until the 1980s. In the beginning, McMillan testified that he would often cough up black stuff for days. Even after the implementation of smoke masks, he testified that it was nearly impossible not to inhale smoke during a fire. As a District Chief, he had to “supervise the firefighting part of it, and to actually fight fire.” Regardless of his position or rank, he stated that he was always exposed to smoke.
As his medical history and lifestyle habits are relevant indicators of his risk factors for heart problems, McMillan was questioned at length about these topics. The seven risk factors for heart problems were provided by Dr. Sampognaro’s deposition. According to Dr. Sampognaro, the more risk | .¡factors that a person has, the more likely he is to have blockage in his arteries. The seven risk factors are listed below:
1) A man over the age of 45
2) High cholesterol
3) High blood pressure
4) Diabetes
5) Tobacco abuse
6) Family history
7) Sedentary lifestyle
Regarding these factors, McMillan acknowledged that the first two risk factors apply to him. Next, he stated that he does not take any medication for high blood pressure or diabetes. While he had smoked in the past, he explained that he had not smoked in over 10 years. As for his family history, both of his parents died from heart attacks when they were in their 80s. Given that they did not have heart problems until their 80s, McMillan did not believe that his parents’ fatal heart attacks qualify as a risk factor. Furthermore, McMillan testified that he often worked out at the gym and has worked part-time as a stagehand for the City of Monroe since retiring from the Fire Department. As a result, McMillan argued that only the first two factors apply.
Shore testified next. Shore admitted that he primarily relied on the 1983, 1997, and 1999 test results that indicated that McMillan’s heart was fine. Nevertheless, he testified that he did receive and review Dr. Sampognaro’s procedure and discharge report from the hospital. He found it noteworthy that the report stated that McMillan had multiple risk factors for heart disease, but admitted he did not know what these risk factors were. Shore conceded that none of the reports ruled out McMillan’s fire service as |4a contributing factor. Furthermore, he testified that he did not ask Dr. Sampognaro or any other doctor whether there was any connection between McMillan’s prior employment and his heart condition. Yet, Shore stated that the lack of heart abnormalities in the reports from the prior litigation, Dr. Sampognaro’s analysis that McMillan possessed multiple risk factors, and the 14-year delay in the condition’s manifestation led him and the City to deny McMillan benefits for his heart condition.
Dr. Sampognaro’s deposition was admitted into evidence at the hearing. When questioned about the 1997 and 1999 tests, Dr. Sampognaro dismissed them. According to him, the stress test “didn’t look at heart function” and the chest x-ray really just “tells us the size of the heart.” Furthermore, he stated that a stress test only has a “75% change (sic) of it picking up an obstructive blockage.” He admitted that it is possible to have “blockages, but no symptoms.” Dr. Sampognaro testified that only a heart cath, not a stress test, would have been able to determine definitively whether there was any blockage.
In regard to his personal knowledge, he first saw McMillan in St. Francis’ emer *872 gency room when he presented with unstable angina. He explained that unstable angina is “new onset angina within the last few weeks or angina that was stable now getting worse.” Dr. Sampognaro stated that McMillan had an 80% blockage in one of his major right coronary arteries. As a result, a stent was put in to alleviate this blockage. In addition to this, Dr. Sampog-naro testified that McMillan also had a 100% blockage of a branch off of the right coronary artery. He stated that this was |sa chronic blockage because “it’s been there for several months to years and he had already felt — built his own collateral to that vessel, so he sort of rerouted the blood to his own system.” He did not have any idea how long the chronic blockage had been there.
Dr. Sampognaro testified that since McMillan had not smoked in the last 10 years, his risk of coronary artery disease had gone back to that of a nonsmoker. Dr. Sampognaro acknowledged that he was not an expert on the risks associated with fire-related smoke inhalation; therefore, he could not say whether the lack of smoke inhalation for the last 18-14 years would also discount it as a risk factor. He testified that there was “nothing in the records that suggest that he has coronary artery disease based on being a firefighter.” Yet, Dr. Sampognaro admitted that he could not say one way or the other that McMillan’s fire service did not contribute to his heart disease.
The WCJ rendered its judgment on December 29, 2011, and ruled in McMillan’s favor awarding past and future medical benefits. There was no award for wage benefits.
In its reasons for judgment, the WCJ stated that:
Unless affirmative proof is adduced to prove a lack of causation, the presumption requires that the disabled fireman be entitled to coverage under the Act. Affirmative proof has been held to include expert medical testimony that the firefighter’s condition did not develop during and/as a result of his work. Said proof is void in this case.
Nevertheless, despite this finding and an award for medical benefits, the WCJ denied McMillan’s request for penalties and attorney fees. The WCJ held that since this was a doubtful case given the 14-year delay in the | r,condition’s manifestation, the City reasonably controverted the claim precluding McMillan’s request for penalties and attorney fees. McMillan now appeals, challenging the WCJ’s denial of penalties and attorney fees.

Discussion

The Firefighter’s Heart and Lung Statute, La. R.S. 33:2581 (the “Act”), provides as follows:
Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, pri-ma facie, to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment.
The Act creates a presumption that the nature of a firefighter’s work caused, con *873 tributed to, accelerated or aggravated his heart disease or infirmity which manifests itself after the first five years of employment. City of Bossier City v. Colvin, 45,-278 (La.App.2d Cir.5/19/10), 36 So.3d 1207, McCoy v. City of Shreveport, 26,181 (La.App.2d Cir.1/25/95), 649 So.2d 103. Nevertheless, this court has previously noted that “since the statute provides no conclusive presumption but only an evidentiary benefit, [Code of Evidence] Article 306 provides that the trier of fact need not credit the inference gained from the Act if ‘it is persuaded by the controverting evidence of the nonexistence of the inferred fact.’ ” La.Code Evid. art. 306; Gilliland v. City of Monroe, 42,458 (La.App.2d Cir.10/10/07), 968 So.2d 270, 274, writ denied, 07-2476, (La.3/7/08), 977 So.2d 908. “The length of time between the manifestation of the infirmity and retirement may be a factor in rebutting the presumption of development and causation during employment.” Coats v. City of Bossier City, 31,-164 (La.App.2d Cir.10/30/98), 720 So.2d 1283, 1287, writ denied, 99-0019 (La.2/12/99), 738 So.2d 581.
Since the City of Monroe did not appeal the award of medical benefits, our review is limited to whether the City reasonably controverted this claim. In order to reasonably controvert a claim and avoid penalties and attorney fees,
the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant’s right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885.
The determination of whether an employer should be cast with penalties and attorney fees in a workers’ compensation action is essentially a question of fact and the WCJ’s finding should not be disturbed on appeal absent manifest error. Coats, supra; Oliveaux v. Riverside Nursing Home, 29,419 (La.App.2d Cir.04/02/97), 691 So.2d 340; Smith v. Tudor Const., 25,783 (La.App.2d Cir.05/04/94), 637 So.2d 666. To reverse a fact finder’s determination under the manifest error standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding 18of the trier of fact; and (2) the court must further determine that the record establishes a finding that is clearly wrong. Stobart v. State, 617 So.2d 880, 882 (La.1993).
The WCJ’s statement that proof of other causes for McMillan’s heart condition was “void in this case” was clearly overstated in view of MeMillan’s various other possible factors for heart disease and the passage of time since his retirement. While the City could not prove that McMillan’s fire service did not contribute to his heart condition, the City did present evidence of contributing factors tending to rebut the presumption of the Act. Importantly, Dr. Sampognaro’s initial report indicated that McMillan exhibited several risk factors that could have at least contributed to his heart condition. Of the risk factors for heart disease, McMillan’s medical history exhibited arguably three factors-his age, high cholesterol, and family history. Additionally, the 14-year gap in the heart condition’s manifestation as noted by the WCJ provided the City with sufficient support to reasonably controvert the claim, espe- *874 daily considering the prior medical reports. Based on the medical factors and the penal nature of the disputed awards, we affirm the WCJ’s denial of penalties and attorney fees.

Conclusion

For the foregoing reasons, the judgment of the workers’ compensation judge is affirmed. Costs of these proceedings are assessed to appellant.
AFFIRMED.