STEWART, J.
 

 | [Defendant-Appellant, Solo Cup, is appealing a judgment rendered in favor of Plaintiff-Appellee, Debra Kendrick, which awarded her $8,000.00 for penalties for termination of all benefits, $9,500.00 for attorney' fees, and $2,398.93 for litigation expenses. Kendrick has filed an answer requesting additional attorney fees for the appeal. For the following reasons, we affirm the judgment and award an additional attorney fee.
 

 Facts
 

 On August 20, 2003, Debra Kendrick suffered a back injury at the L4-5 disc level while working at Solo Cup. Prior to this accident, she underwent back surgery at'the L5-S1 disc level on April 3, 2001. This surgery was performed by Dr. Robert Holladay.
 

 Dr. Pierce Nunley saw Kendrick on April 9, 2004. His initial diagnosis was low back pain which was cliscogenic in nature, meaning that the pain was coming from the disc itself. He compared pre-accident ' and post-accident MRI films. The post-accident film revealed a herniated disc at L4-5, which was not present in the pre-accident film. Dr. Nunley opined that her back pain was causally related to the work accident. He recognized that she was in pain prior to the accident. However, it was not disabling and her pain worsened after the accident.
 

 
 *298
 
 On October 21, 2005, Kendrick filed a Disputed Claim for Compensation. Kendrick also filed an Opposition to the Orthopedic Independent Medical Evaluation (IME) with Dr. Karl Bilderback. The hearing on the opposition to the IME was heard on December 5, 2005. The WCJ denied the opposition and ordered Kendrick to appear at the IME with |2Pr. Bilderback on January 11, 2006, at 3:15 p.m. Based on his findings from the IME, Dr. Bilderback recommended that Kendrick undergo a Functional Capacity Evaluation (FCE), and “if the results of the FCE shows that she could not return to her previous occupation, that she be considered for retraining.”
 

 Solo Cup filed a Motion to Compel the FCE on February 27, 2006. This motion was initially denied by the WCJ. However, after a re-evaluation by Solo Cup’s choice of orthopedic surgeon, Dr. Robert Holla-day, the WCJ ordered Kendrick to submit to a FCE at Solo Cup’s request.
 

 Dr. Holladay and Dr. Bilderback determined that Kendrick’s current back condition was unrelated to the August 20, 2003 work accident. Based on these findings, Solo Cup terminated Kendrick’s medical benefits and indemnity benefits on January 11, 2007. Solo Cup believed that she did not suffer any new injuries in the work accident, and that her back problems stemmed from the prior back surgery.
 

 The WCJ rendered his judgment in favor of Debra Kendrick, finding that she was temporarily and totally disabled as a result of the accident and injury and that she was entitled to all benefits under the Workers’ Compensation Act. He determined that she was entitled to total disability benefits and reinstated such benefits at a rate of $228.63 per week from January 11, 2007. The WCJ approved the lumbar spine surgery recommended by Dr. Nunley and found Solo Cup’s adjuster arbitrary and capricious in terminating her benefits. Kendrick was also awarded penalties |3in the amount of $8,000.00 for the termination of her benefits, attorney fees in the amount of $9,500.00, and litigation fees in the amount of $2,398.93, for the denial of medical and indemnity benefits. Solo Cup now appeals.
 

 LAW AND DISCUSSION
 

 Solo Cup asserts four assignments of error in its appeal. In the first assignment, Solo Cup argues that the WCJ erred in finding that Debra Kendrick’s alleged disability/injury after January 11, 2007, was related to the work accident which occurred on or about August 20, 2003. More specifically, Solo Cup argues that Dr. Bilderback’s testimony should have been given greater weight than that of Dr. Pierce Nunley.
 

 Solo Cup’s second assignment of error contends that the trial court erred in finding that Debra Kendrick’s surgery was reasonable and necessary. In this assignment, Solo Cup reiterates its argument in the first assignment of error by asserting that Kendrick’s current condition is unrelated to the work accident. Solo Cup urges this court should find that the surgery recommendation made by Dr. Nunley is not related to the work accident.
 

 Due to the fact that these two assignments both involve the issue of whether Kendrick’s injury resulted from her workplace accident, we will address these interrelated errors together.
 

 In a workers’ compensation case, as in other cases, the appellate court’s review is governed by the manifest error or clearly wrong standard. Williams
 
 v. Wal-Mart Stores,
 
 2000-0863 (La.App. 4 Cir. 5/16/01), 787 So.2d 1134. Whether the claimant has carried his burden of proof and |4whether testimony is credible are
 
 *299
 
 questions of fact to be determined by the hearing officer.
 
 Harris v. Casino Magic,
 
 38,137 (La.App. 2 Cir. 1/28/04), 865 So.2d 301. Unless shown to be clearly wrong, the trial court’s factual findings of work-related disability will not be disturbed where there is evidence which, upon the trier of fact’s reasonable evaluation of credibility, furnishes a reasonable, factual basis for those findings.
 
 Id.
 
 Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
 
 Blanson v. GM Inland Fisher Guide,
 
 33,498 (La.App. 2 Cir. 6/23/00), 764 So.2d 307.
 

 In a workers’ compensation proceeding, the claimant bears the burden of demonstrating by a preponderance of the evidence that an employment accident resulted in disability.
 
 Blanson v. GM Inland, Fisher Guide, supra.
 
 Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not.
 
 Key v. Insurance Company of North America,
 
 605 So.2d 675 (La.App. 2 Cir.1992).
 

 The causal connection can be established when the employee proves that before the accident he was in good health, but commencing with the accident, symptoms of the disabling condition appeared, and there is sufficient medical evidence to show a reasonable possibility of causal connection between the accident and the disabling condition.
 
 Harris, supra.
 

 |5The general rule is that the testimony of a treating physician should be accorded greater weight than that of a physician who examines a patient only once or twice.
 
 Williams v. Wal-Mart Stores, Inc.,
 
 2000-0863 (La.App. 4 Cir. 5/16/01), 787 So.2d 1134. However, the treating physician’s testimony is not irre-buttable, and the trier of fact is required to weigh the testimony of all medical witnesses.
 
 Williams, supra; Celestine v. U.S. Fidelity & Guaranty Co.,
 
 561 So.2d 986 (La.App. 4 Cir.1990).
 

 If the trial court concludes that the appointed physician is a disinterested party, his conclusions will be entirely objective and accordingly his opinion will be given significant weight.
 
 Green v. Coca Cola Bottling Company, Ltd.,
 
 477 So.2d 904 (La.App. 4 Cir.1985),
 
 writ denied,
 
 478 So.2d 910 (La.1985). The significant weight given to the opinion of the court-appointed expert can vary in accordance with the various factors which a trial judge utilizes in evaluating the testimony of any other witness.
 
 Id.
 
 Thus, the significant weight can be lesser or greater depending on the qualifications or expertise of the physician, the type of examination he performs, his opportunity to observe the patient, his review of other physicians’ examinations and tests, and any other relevant factors.
 
 Id.
 

 Solo Cup asserts that in determining whether a claimant’s condition is related to a specific traumatic event, one of the primary issues is whether the claimant has a preexisting condition and the extent in which that preexisting condition affects the traumatic incident. Solo Cup argues that Dr. Holladay, who treated and examined Kendrick prior to a work accident and then | (¡examined her after the work accident, would clearly be in the best position to provide the court with his opinion as to whether or not the current injuries are related to the traumatic event. Dr. Holla-day treated Kendrick prior to her work accident at Solo Cup and performed a lumbar discectomy on April 3, 2001. Dr. Holladay was also hired by Solo Cup to
 
 *300
 
 examine Ms. Kendrick and provide a second medical opinion.
 

 The WCJ relied heavily on Dr. Nunley’s testimony. After reviewing Kendrick’s medical history, exam records, a CT scan pre-accident, and post-accident MRIs, Dr. Nunley stated that Kendrick’s symptoms were coming from the L4-5 disc and that the injury is causally related to the work accident. He ultimately decided that Kendrick was a surgical candidate and conducted a discography, which is a test to find the specific source or disc level of the pain. After the discography confirmed that the source of Kendrick’s pain was the L4-5 disc, Dr. Nunley recommended lumbar disc surgery.
 

 Dr. Holladay testified that there is a possibility that the accident caused the new injury at L4-5. However, he disagreed with Dr. Nunley’s surgery recommendation. Dr. Bilderback, the independent medical examiner, deferred to Dr. Holla-day’s testimony.
 

 Solo Cup included a summary of Dr. Holladay’s medical records, which it argues proves that Kendrick suffered from a preexisting back condition. Kendrick began having back problems in 2001.
 

 An employee’s preexisting disease or infirmity does not disqualify his workers’ compensation claim if the work-related injury either aggravated, or [7combmed with the disease or infirmity to produce the disability for which compensation is claimed.
 
 Lubom v. L.J. Earnest, Inc., 579
 
 So.2d 1174 (La.App. 2 Cir.1991). When a claimant proves that before the accident he had not exhibited disabling symptoms, but that commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal
 
 connection
 
 between the accident and the activation of the disabling condition, a claimant’s work injury is presumed to have
 
 aggravated,
 
 accelerated or combined with any preexisting disease or infirmity to produce his disability.
 
 Id.
 
 If the evidence is evenly balanced, or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation, then the claimant fails to carry his burden of proof.
 
 Id.
 

 Kendrick testified that her pain and problems after the 2003 work accident were different and worse than those after her 2001 surgery. Additionally, Dr. Nun-ley recognized that Kendrick experienced pain prior to the work accident, but it was not disabling, and that her pain was more severe after the work accident. The WCJ accepted Kendrick’s testimony as credible and determined that her current back condition was caused by a work-related accident during her employment with Solo Cup. Her testimony was confirmed by medical records and tests.
 

 Dr. Nunley reviewed Kendrick’s medical history, exam records, a CT scan pre-acci-dent, and post-accident MRIs before determining that the lumbar spine surgery was medically necessary. The WCJ agreed that the |slumber spine surgery was necessary after noting that Dr. Nun-ley’s diagnosis and recommendations were the most reliable and credible and somewhat supported by Solo Cup’s medical exam, which was conducted by Dr. Holla-day, and the independent medical exam, which was conducted by Dr. Bilderback.
 

 We conclude that the WCJ correctly found that Kendrick’s current back condition was caused by a work-related accident during her employment with Solo Cup and that the lumbar spine surgery was medically necessary.
 

 Solo Cup asserts in the third assignment of error that the WCJ erred in
 
 *301
 
 finding that Debra Kendrick was entitled to reinstatement of TTD benefits from January 11, 2007. Citing La. R.S. 23:1221(l)(c) Solo Cup argues that the Louisiana Workers’ Compensation Act and our jurisprudence indicates that an employee must prove by clear and convincing evidence, unaided by any presumption of disability, that an employee is physically unable to engage in any employment. La. R.S. 23:1221(l)(e) states in pertinent part:
 

 (c) For purposes of Subparagraph (l)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subpar-agraph (l)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, 1 notwithstanding the location or availability of any such employment or self-employment.
 

 Dr. Holladay commented that Kendrick could lift up to 10 pounds. Dr. Nunley agreed with this work restriction. The WCJ found that Kendrick cannot continue to perform her job due to her work-related injury, but that she was capable of “restricted light” duty as outlined in the functional capacity evaluation performed by Occ-Fit. Further, the WCJ determined that temporary total disability payments should be reinstated at the rate of $228.63 per week from January 11, 2007.
 

 Kendrick was restricted to modified duty work. The record fails to indicate that Solo Cup made any effort to provide Kendrick a light duty job to accommodate these work restrictions. Therefore, the award of benefits should be affirmed.
 

 In the fourth and final assignment of error, Solo Cup contends that the WCJ erred in providing penalties and attorney fees for termination of all benefits on January 11, 2007. Kendrick requests an increase in attorney fees awarded by the WCJ. She argues that this award is low, considering the length of the many medical exhibits, the four expert depositions, the adjuster’s deposition, her deposition, and the pretrial hearings.
 

 Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. hnLa. R.S. 23:1201(1). A WCJ has great discretion in deciding whether to award or deny penalties and attorney fees and such a decision will not be disturbed absent abuse of discretion.
 
 Moore v. Transmissions, Inc.,
 
 41,472 (La.App. 2 Cir. 9/27/06), 940 So.2d 694. A workers’ compensation insurer has a duty to investigate to determine cause of exacerbation of claimant’s injuries before terminating benefits.
 
 Lynn v. Berg Mechanical,
 
 582 So.2d 902 (La.App. 2 Cir.1991).
 

 After finding that Solo Cup’s adjuster was arbitrary and capricious in terminating benefits on January 11, 2007, the WCJ awarded Kendrick $8,000.00 for termination of benefits. The WCJ referred to the adjuster’s admission that she did not review the medical records, and therefore was unaware of Dr. Nunley’s opinion as to the causation of the injury. We agree with the WCJ in determining the adjuster was indeed arbitrary and capricious in ter
 
 *302
 
 minating Kendrick’s benefits without first performing her duty to investigate.
 

 Up until the time of trial, Kendrick’s legal counsel spent 123 hours on the case. Her legal counsel also spent an additional seven hours at trial and in preparing a post-trial brief, which increased the total time to 130 hours. After taking into consideration the number of depositions taken and the discovery necessaiy to prepare this matter for trial, the WCJ awarded Kendrick $9,500.00 in attorney fees. We cannot say that the WCJ erred in awarding $9,500.00 in attorney fees. This award is a fair and just amount for the efforts made to recover Kendrick’s benefits.
 

 | uAdditionally, Kendrick is requesting additional attorney fees for the appeal. She asserts that her legal representation has spent at least 12 hours on this brief and requests an additional $2,500.00 in attorney fees.
 

 A workers’ compensation claimant is entitled to an increase in additional attorney fees to reflect additional time incurred in defending the employer’s unsuccessful appeal.
 
 Frith v. Riverwood Inc.,
 
 2004-1086 (La.1/19/05), 892 So.2d 7. Taking into consideration the complexity of the case and the fact that the WCJ already awarded counsel a fee of $9,500.00, we find an additional fee of $2,000.00 is warranted.
 

 CONCLUSION
 

 For the aforementioned reasons, the judgment of the WCJ is affirmed. Judgment is further rendered in favor Kendrick for an additional attorney fee of $2,000.00. Cost of this appeal are assessed against the appellant, Solo Cup.
 

 AFFIRMED. ADDITIONAL ATTORNEY FEE AWARDED.