LOLLEY, J.
| gDeiendants J.P. Morgan Chase Bank, N.A. (“Chase”) and Liberty Mutual Insurance Company (“Liberty Mutual”) appeal the judgment of the District IE Office of Workers’ Compensation (“OWC”) favoring plaintiff Connie Hofler (“Hofler”). For the following reasons, we affirm the OWC’s decision.
Facts
Hofler was employed by Chase as a payroll processor. Her job duties consist *1131 ed of pulling 20 to 40 pound boxes from shelves, transporting them to a desk, scanning the contents of the boxes into the computer, and stacking the boxes on pallets. About 80% of her job involved lifting and moving boxes. Hofler suffered an injury to both her neck and elbow while employed with Chase. Her neck injury is the only injury at issue in this case.
Hofler saw Dr. Mark Dollar, her family physician, complaining of neck and elbow pain. She was diagnosed with a cervical strain and received treatment, which was paid for by the defendants. She also saw Dr. Douglas Liles, an orthopedic physician, for the same problems. Several months later, Hofler saw Dr. Karl Bilderback to get a second opinion regarding her neck and elbow problems at the request of the defendants. Dr. Bilderback found that her elbow problem was work-related, while her neck problem was not. Thereafter, the defendants’ claims adjuster denied any further treatment for Hofler’s neck problem.
Dr. Liles originally disagreed with Dr. Bilderback’s findings that Hofler’s neck injury was not work-related; however, he then reversed his opinion to agree. Dr. Liles stated Hofler needed a neurological evaluation, but defendants denied coverage of such.
Hofler next saw Dr. Anil Nanda, a neurosurgeon, without defendants’ approval. Dr. Nanda requested Hofler have a CT scan and a myelogram of her neck in order to evaluate her injury; however, defendants denied coverage of these tests.
Hofler then underwent surgery performed by Dr. Liles on her' elbow. When the surgery failed to alleviate the pain in her neck, Dr. Liles again changed his opinion to find that Hofler’s neck injury was work-related. Hofler filed suit on October 16, 2008, claiming that Chase had not | .^authorized medical treatment or allowed her to have her choice of physician. She also sought penalties, interest, attorney fees and approval for medical treatment to her neck.
Thereafter, Hofler submitted to another evaluation, this time upon request of the defendants, by Dr. Douglas Brown. He found her neck problem to be unrelated to her work. Defendants then requested Ho-fler be evaluated by Dr. Marcos Ramos, a neurologist. Dr. Ramos requested Hofler undergo an MRI so that he could properly evaluate her neck injury. Defendants denied coverage of this test as well.
The case went before the OWC which found that Hofler sustained the neck injury as a result of a specific accident in the course and scope of her employment with Chase. The OWC subsequently found Ho-fler entitled to medical treatment and benefits, her choice of physician, and approval for three medical tests — the myelogram and post-myelogram CT scans ordered by Dr. Nanda and the MRI ordered by Dr. Ramos. The OWC assessed penalties to defendants totaling $6,000 for denying coverage of medical testing as ordered by Drs. Nanda, Ramos, and Liles. The OWC also ordered defendants to pay $10,000 in attorney fees. Defendants filed the instant appeal.
Law and Discussion
Chase and Liberty Mutual assert four assignments of error. First, they assert the OWC erred in finding the plaintiff met her burden of proving a compensable accident. Second, they assert the OWC erred in finding that Hofler met her burden of proving a causal relationship between her injury and her alleged work accident. Third, they claim the OWC erred in assessing penalties and attorney fees against the defendants because this denial was reasonable. Fourth, the defendants argue in the alternative that if the penalties are found to be warranted, the OWC erred in *1132 assessing multiple penalties against defendants for denying the same tests for the same reason.

Compensability of the Accident and Causation

The first two assignments of error are related and will, therefore, be addressed together. Defendants claim the OWC erred in finding the plaintiff met her burden of proving both a compensable accident and causation between the accident and her injury. We disagree.
|4An employee is entitled to compensation benefits if she proves by a preponderance of the evidence that she sustained a “personal injury by an accident arising out of and in the course of’ employment. La. R.S. 23:1031; Buxton v. Iowa Police Dept., 2009-0520 (La.10/20/09), 23 So.3d 275. An “accident” is defined as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 23:1021(1). Although the workers’ compensation law is liberally construed in favor of coverage, the claimant’s burden of proving an accident is not relaxed; she must prove by a preponderance of the evidence that an accident occurred and that the resulting disability is related to an on-the-job injury. McLin v. Industrial Specialty Contractors, Inc., 2002-1539 (La.07/02/03), 851 So.2d 1135; Sheppard v. Isle of Capri, 40,048 (La.App.2d Cir.08/17/05), 909 So.2d 699.
A claimant’s testimony alone may be sufficient to establish an accident provided that “(1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident, and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident.” Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La.1992). In determining whether the Bruno elements are satisfied, the commentators have articulated six pertinent factors the courts have considered: (1) late report, (2) supervisor and coworker testimony, (3) family and friends testimony, (4) medical evidence, (5) continuing to work, and (6) prior injuries. Sheppard v. Isle of Capri, supra.
Factual findings in workers’ compensation cases are subject to the manifest error rule. Buxton v. Iowa Police Dept., supra. Under this rule, the reviewing court does not decide whether the factfin-der was right or wrong, but only whether its findings are reasonable. Id. Whether the claimant has carried her burden of proof and whether testimony is credible are questions of fact to be decided by the workers’ compensation judge. Id. When there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Winford v. Conerly Corp., 2004-1278 (La.03/11/05), 897 So.2d 560; Sheppard v. Isle of Capri, supra.
At the crux of the case sub judice is whether Hofler’s neck injury was caused from a specific accident as defined by the Louisiana workers’ compensation statutes. If her injury was found to have been caused by such an accident, the result would be that Hofler is entitled to compensation benefits. However, if her injury was found to be from either a gradual deterioration over time or from a non-work-related incident, Hofler would not be entitled to compensation benefits.
Hofler testified .that while moving boxes at work one day she felt a “pull or tug” on the right side of her neck that caused her severe pain. She began seeing a doctor within a month of the incident. Her coworker Lynn Moorehead corroborated Ho- *1133 fler’s testimony in that she stated Hofler complained to her that her neck was hurt and she needed to see a doctor. Her husband, Kenneth Hofler, also corroborated the fact that his wife complained of an injury to her neck and that she reported to him that she injured herself while lifting boxes at work. The OWC found Hofler to be very persuasive and credible and her testimony corroborated by her husband Kenneth Hofler and her coworker Lynn Moorehead. As noted by the OWC:
The Court finds that the claimant’s testimony was very persuasive to this Court that she injured her neck during an identifiable and precipitous event occurring during her employment at J.P. Morgan Chase, when she “pulled one box from the top shelf and noted a pull” in her neck, and her neck started hurting, as stated in her statement of February 21, 2007 and as stated in this Court today and as reported to Dr. Nanda. Therefore, I find that she was injured in the course and scope of her employment. That finding' is also supported by the testimony of her husband and her coworker, one Lynn Moorehead.
The medical conclusions from the many doctors who evaluated Hofler differed and even changed over time regarding whether or not the injury was work-related. However, despite this inconsistency the factfin-der was reasonable to find that Hofler suffered a compensable injury that was caused by the work-related accident. Therefore, this assignment of error to the contrary is meritless.

Penalties and Attorney Fees

lfiIn the third and fourth assignments of error, defendants assert the OWC erred in assessing penalties and attorney fees against them for two reasons: the denial was reasonable and they. were assessed multiple penalties for denying the same diagnostic tests for the same reason.
Louisiana R.S. 23:1201(F) states that penalties may be assessed for failure to provide payment.[1] Louisiana R.S. 23:1201(F)(2) states, however, that these penalties shall not be assessed if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control. The phrase “reasonably controvert” means that the employer or insurer must have “some valid reason or evidence on which to base his denial of benefits.” Brown v. Texas-LA Cartage, Inc., 1998-1063 (La.12/01/98), 721 So.2d 885; City of Bossier City v. Colvin, 45,278 (La.App.2d Cir.05/19/10), 36 So.3d 1207.
Awards of penalties and attorney fees in compensation cases are essentially penal and are intended to deter indifference and undesirable conduct by employers and their insurers toward injured workers. Trahan v. Coca Cola Bottling Co. United, Inc., 2004-0100 (La.03/02/05), 894 So.2d 1096; City of Bossier City v. Colvin, supra. Penalties should not be imposed in doubtful cases, where a bona fide dispute exists as to the claimant’s entitlement to benefits. J.E. Merit Constructors, Inc. v. Hickman, *1134 2000-0943 (La.01/17/01), 776 So.2d 435; City of Bossier City v. Colvin, supra.
The workers’ compensation judge has great discretion in determining whether to allow or disallow penalties and attorney fees and her decision will not be disturbed absent manifest error. Alexander v. Pellerin Marble & Granite, 1993—1698 (La.01/14/94), 630 So.2d 706; Thompson v. The Animal Hosp., 39,154 (La.App.2d Cir.12/15/04), 889 So.2d 1193. As such, reasonable evaluations of credibility and reasonable inferences of fact 17should not be disturbed upon review; to reverse the WCJ’s findings of fact, the reviewing court must conclude that a reasonable basis for that finding does not exist in the record. Dean v. Southmark Const., 2003-1051 (La.07/06/04), 879 So.2d 112; Thompson v. The Animal Hosp, supra.
In support of the assertion that their denial of coverage of testing was reasonable, defendants rely on the language of the OWC in her oral reasons for judgment:
I find that even though the defendants had a reasonable basis to deny the claim through the medical evidence as given by Dr. Liles and other treating physicians, I do find that their denial of medical testing as recommended by Dr. Nan-da, Dr, Ramos and as reiterated by Dr. Liles, to be arbitrary and capricious conduct; for their failure to approve the testing recommended by Dr. Nanda, the Court is assessing a penalty of two thousand dollars ($2000); for their failure to approve the testing as recommended by their own treating physician in the field of neurosurgery, Dr. Ramos, a penalty of two thousand dollars ($2000) is assessed against them; and for their failure to provide the testing as reiterated by Dr. Liles, an additional] two thousand dollars ($2000) penalty is assessed against them. And the Court is awarding attorney fee in this matter in the amount of ten thousand dollars ($10,-000).
Defendants assert that the OWC made contradictory statements by saying first that the defendants had a reasonable basis for denying the claim, and then stating that this same denial was arbitrary and capricious. This contradiction, defendants argue, should be construed to find that the penalties were assessed in error because the denial was reasonable.
A judgment and reasons for judgment are two separate and distinct documents; it is well-settled law that the trial court’s oral or written reasons form no part of the judgment. La. C.C.P. art. 1918; Burmaster v. Plaquemines Parish Government, 2010-2127 (La.09/22/10), 45 So.3d 1061. Appeals are taken from the judgment, not the written reasons for judgment. La. C.C.P. arts. 2082, 2083; Greater New Orleans Expressway Com’n v. Olivier, 2002-2795 (La.11/18/03), 860 So.2d 22; Taylor v. Dowling Gosslee & Associates, Inc., 44,654 (La.App.2d Cir.10/07/09), 22 So.3d 246, unit denied, 2009-2420 (La.02/05/10), 27 So.3d 299. If there is a conflict between the two, the trial court’s signed judgment prevails over the reasons for judgment. Gulfco Inv. Group, Inc. v. Jones, 577 So.2d 775 (La.App. 2d Cir.1991). This allows a signed final judgment to take precedence over substantive misstatements because a final judgment is usually prepared with care, may be revised before it is signed, and the aggrieved party has recourse to a timely application for a new trial or timely appeal. Hebert v. Hebert, 351 So.2d 1199 (La.1977); Gulfco Inv. Group. Inc. v. Jones, supra. While reasons for judgment are helpful in determining the rationale for a judgment, only the final judgment can be appealed. Admittedly her oral reasons for judgment appear to be contradictory from her final judgment; however, there is evi *1135 dence in the record to support thé imposition of penalties and attorney fees as stated in the final judgment. Therefore, the final judgment awarding penalties and attorney fees stands.
Additionally, this Court finds the claim was not reasonably controverted and defendants cannot escape penalties on this ground because there was no valid reason or evidence on which they based their denial, of coverage of the diagnostic testing. It is well settled that greater weight should be given to the opinion of a treating physician over the opinion of a physician who examines the patient only once or twice. Kendrick v. Solo Cup, 44,303 (La.App.2d Cir.06/03/09), 15 So.3d 295. Although Dr. Liles wavered as to whether he believed Hofler’s neck injury was work-related, at the time defendants made the decision to deny all subsequent coverage, Dr. Liles’ opinion was that her injury was work-related. Defendants sent Hofler to Dr. Bilderback for a second opinion and once they got an opinion to the contrary they denied all coverage from that point forward, even though they had evidence from Hofler’s treating physician that the injury was work-related and should, therefore, be covered. Furthermore, defendants not only denied testing requested by Hofler’s chosen physicians, Drs. Liles and Nanda, but they also denied coverage of diagnostic testing from a physician of their choice, Dr. Ramos. Defendants denied coverage of the very testing that would aid in determining whether or not Hofler’s injuries were work-related and thereby in need of coverage. The claim was not reasonably controverted.
Defendants also assert that the imposition of multiple penalties was assessed in error. We disagree; R.S. 23:1201(F) provides for multiple penalties for multiple violations of compensation and medical benefits 13claims. Fontenot v. Reddell Vid-rine Water Dist., 2002-0439 (La.01/14/03), 836 So.2d 14. Here, the OWC found the denial of three separate tests to be three separate violations and assessed penalties accordingly. We find no manifest error in this factual determination, therefore, we affirm the penalties and attorney fees-as awarded and decline to decrease them on appeal.
Conclusion
For the foregoing reasons, the judgment in favor of Connie Hofler is affirmed. All costs of this appeal are assessed to J.P. Morgan Chase Bank, N.A. and Liberty Mutual Insurance Company.
AFFIRMED.

. La. R.S. 23:1201(F) provides in part:
Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.