STEWART, J.
 

 |, This is an appeal from the Office of Worker’s Compensation, District 1 W, Caddo Parish, the Honorable Carey Holli-day presiding. Plaintiff-Appellant, Robert Wright, is appealing a judgment rendered in favor of Defendant-Appellee, Town of Oil City (hereinafter referred to as “Oil City”). For the reasons that follow, we affirm the judgment.
 

 FACTS
 

 On December 9, 1998, Wright was injured in the course of his employment with Oil City as a laborer, when the vehicle he was traveling in was struck by a train. Wright was 50 years old at the time of the accident. He received medical attention after the accident at a local hospital and was discharged.
 

 Wright, who has not worked since the accident, has been receiving worker’s compensation benefits and social security disability benefits since the accident.
 

 Approximately six months after the accident, Wright sought treatment from Dr. Kerry Tarvins, a chiropractor in Shreveport, who diagnosed him with an “acute mild to moderate lumbar sprain/strain with associated lumbalgia.” Dr. Tarvins then referred Wright to Dr. Karl Bilderback, an orthopedist, who determined that Wright had a pre-existing degenerative disc disease and scoliosis. In his report on June 30, 1999, Dr. Bilderback noted that Wright suffered from “persistent lumbar pain secondary to an acute injury superimposed on a significant amount of degenerative disease in his lumbar spine.”
 

 |2On October 6, 1999, Wright submitted to a functional capacity evaluation (“FCE”). The FCE report indicated that Wright was not cooperative with the physical therapist. The examiner noted that since Wright refused to complete the examination “secondary to inappropriate illness behaviors,” he was limited in his ability to evaluate Wright’s true work capacity. He believed that Wright gave inappropriate effort and magnified his symptoms. The examiner did find that Wright was capable of “light duty.”
 

 Wright had a three-year hiatus of any medical treatment from October 6, 1999, the date that the FCE evaluation took place, until November 11, 2002, when Dr. Austin Gleason first examined him.
 

 Dr. Gleason, a board-certified orthopedic spine surgeon, began treating Wright on November 11, 2002. Wright, informed Dr. Gleason that he was experiencing pain in his lower thoracic and lumbar spine region, and that he was symptom-free prior to the
 
 *965
 
 accident. During this appointment, Dr. Gleason conducted a lumbar spine x-ray, which revealed levortary scoliosis and spondylosis. He noted that levortary scoliosis, which is defined as a curvature of the spine, is generally a congenital condition. Dr. Gleason also recognized spondy-losis as degenerative changes in the spine.
 

 On January 24, 2003, Dr. Gleason recommended that Wright receive a lumbar MRI. This lumbar MRI, which was performed on February 19, 2003, revealed that Wright had severe degenerative scoliosis and foraminal stenosis, a narrowing of the spaces in the vertebrae where the nerve roots exit the spinal canal. He also noticed bulging discs at the L3^4 and L4-5 | ¡¡levels. A x-ray performed on that same day yielded the same results. Additionally, an EMG study performed by Dr. David Abrams yielded normal results. More importantly, the EMG study resulted in a negative finding, which meant no nerve damage was present.
 

 On April 18, 2003, Wright underwent a CT myelogram, which showed multilevel degenerative changes in the spine.
 

 Dr. Gleason noted that Wright could not perform heavy labor and that he was a possible surgical candidate. He also continuously prescribed pain medication for Wright. Dr. Gleason remarked in his deposition that there was a “reasonable medical probability that the degenerative scoliosis preexisted the accident.”
 

 On July 11, 2003, Dr. Gleason referred Wright to his partner, Dr. Pierce Nunley, for a surgical evaluation. Even though Dr. Nunley recommended a laminectomy and a fusion, Wright opted not to have the surgery.
 

 Oil City hired Dr. Gordon Mead to provide a second medical opinion. In his deposition, Dr. Mead opined that Wright’s inability to return to his previous occupation was due to his preexisting conditions, as opposed to the lumbar strain that occurred as a result of the accident:
 

 Q. Doctor, what was your assessment or impression of Mr. Wright’s conditions as of that initial examination?
 

 A. I felt that he most likely sustained a lumbar injury at the time of the injury. I was unable to explain the persistence of the pain despite good conservative treatment. My opinion is that he should be able to return to his previous occupation at that time. If he was unable to do so, I felt it would be due to his preexisting degenerative lumbar disease as opposed to soft tissue injuries occurring at the time of the accident.
 

 l4Pr. Mead disagreed with Dr. Nunley’s recommendation for surgery. Wright was then referred to Dr. John Sandifer for an independent medical exam. Dr. Sandifer also disagreed with the surgery recommendation.
 

 Wright filed this suit in order to be declared permanently and totally disabled. In his pretrial brief, Wright ádmitted to pre-existing degenerative problems throughout his spine, but denied having any “back symptoms” prior to the accident. In turn, Oil City asserted that Wright’s current disability was caused solely by a severe preexisting condition. It further asserted that if Wright currently has limitations, the limitations are related to degenerative disc disease, and are not the result of any lumbar strain or any other condition caused by the motor vehicle accident on December 9,1998.
 

 This matter was tried on February 23, 2010. The Worker’s Compensation Judge (“WCJ”) found that Wright failed to prove by a preponderance of evidence that the work accident aggravated his pre-existing condition and dismissed the case with prejudice. The WCJ noted that Wright reached full recovery for the injuries he sustained in the December 9, 1998, acci
 
 *966
 
 dent at some point after October of 1999. He also questioned the truthfulness of Wright’s testimony. The WCJ further noted that since Wright recovered from the injuries caused by the work-related accident, his current problems must stem exclusively from his congenital scoliosis and his severe degenerative back disease. For these reasons, the WCJ dismissed Wright’s claim with prejudice.
 

 Wright filed- this appeal, asserting two assignments of error.
 

 LAW AND DISCUSSION
 

 |
 
 ^Preexisting Conditions/Causation
 

 In his first assignment of error, Wright asserts that the WCJ erred in determining that he failed to meet his burden of proof that the December 9,1998, accident caused his injuries or aggravated his preexisting condition. Similarly, in his second assignment of error, Wright alleges that the WCJ erred in failing to apply the presumption of causation. Since these two assignments of error are interrelated, we will discuss them together.
 

 Factual findings in worker’s compensation cases are subject to the manifest error or clearly wrong standard of appellate review.
 
 Banks v. Industrial Roofing,
 
 96-2840 (La.7/1/97), 696 So.2d 551;
 
 Grambling State University v. Walker,
 
 44,995 (La.App. 2 Cir. 3/3/10), 31 So.3d 1189. Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the hearing officer.
 
 Harris v. Casino Magic,
 
 38,137 (La.App.2d Cir.1/28/04), 865 So.2d 301. In applying the manifest error-clearly wrong standard, the appellate court does not determine whether the trier of fact was right or wrong, but determines whether the factfin-der’s conclusion was a reasonable one.
 
 Banks, supra.
 
 Unless shown to be clearly wrong, the trial court’s factual findings of work-related disability will not be disturbed where there is evidence which, upon the trier of fact’s reasonable evaluation of credibility, furnishes a reasonable, factual basis for those findings.
 
 Id.
 
 Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences Rare as reasonable.
 
 Blanson v. GM Inland Fisher Guide,
 
 33,-498 (La.App. 2 Cir. 6/23/00), 764 So.2d 307.
 

 An employee is entitled to worker’s compensation benefits if he receives a personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031;
 
 McLin v. Industrial Specialty Contractors, Inc.,
 
 2002-1539 (La.7/2/03), 851 So.2d 1135;
 
 Scott v. Super 1 Foods,
 
 45,636 (La.App. 2 Cir. 9/29/10), 48 So.3d 1133. An employment-related accident is an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La. R.S. 23:1021(1). Although the worker’s compensation law is liberally construed in favor of coverage, the claimant’s burden of proving an accident is not relaxed; he must prove by a preponderance of the evidence that an accident occurred and the resulting disability is related to an on-the-job injury.
 
 McLin, supra; Hofler v. J.P. Morgan Chase Bank, N.A.
 
 46,047 (La.App. 2 Cir. 1/26/11), 57 So.3d 1128. Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not.
 
 Key v. Insurance Company of North America,
 
 605 So.2d 675 (La.App. 2 Cir.1992).
 

 An employee’s preexisting disease or infirmity does not disqualify his
 
 *967
 
 worker’s compensation claim, if the work-related injury either aggravated or combined with the disease or infirmity to produce the disability for which compensation is claimed.
 
 Poland v. Kroger, No. 404,
 
 82,576 (La.App. Cir. 12/8/99), 747 So.2d 711,
 
 writ denied,
 
 2000-0583 (La.4/7/00), 759 So.2d 764. The causal connection between the disability and the on-the-job injury can be established when the employee proves that before the accident he was in good health, but commencing with the accident, symptoms of the disabling condition appeared, and there is sufficient medical evidence to show a reasonable possibility of causal connection between the accident and the disabling condition.
 
 Scott, supra.
 

 To obtain the benefit of this presumption of causation, the plaintiff must show (1) that he was in good health prior to the accident at issue, (2) that subsequent to the accident, symptoms of the alleged injury appeared and continuously manifested themselves afterward, and (3) through evidence, either medical, circumstantial, or common knowledge, a reasonable possibility of causation between the accident and the claimed injury.
 
 Id.
 

 When a claimant proves that before the accident he had not exhibited disabling symptoms, but that commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, a claimant’s work injury is presumed to have aggravated, accelerated or combined with any preexisting disease or infirmity to produce his disability.
 
 Kendrick v. Solo Cup,
 
 44,303 (La.App. 2 Cir. 6/3/09), 15 So.3d 295;
 
 Lubom v. L.J. Earnest, Inc.,
 
 579 So.2d 1174 (La.App. 2 Cir.1991). If the evidence is evenly balanced, or shows only | ssome possibility that a work-related event produced the disability or leaves the question open to speculation, then the claimant fails to carry his burden of proof.
 
 Lubom, supra.
 

 A claimant’s testimony alone may be sufficient to establish an accident provided that “(1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident, and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident.”
 
 Bruno v. Harbert Intern., Inc.,
 
 593 So.2d 357 (La.1992);
 
 Hofler, supra.
 
 In determining whether the
 
 Bruno
 
 elements are satisfied, the commentators have articulated six pertinent factors the courts have considered: (1) late report, (2) supervisor and coworker testimony, (3) family and friends’ testimony, (4) medical evidence, (5) continuing to work, and (6) prior injuries.
 
 Hofler, supra; Bruno, supra.
 

 In this opinion, we must determine whether Wright’s back condition is related to the December 9, 1998, accident pursuant to the Louisiana worker’s compensation statutes. In the event that his injury is found to be a result of a unrelated injury or ailment, Wright will not be entitled to compensation benefits.
 

 Wright denied having any problems in his lumbar region prior to the accident. To the contrary, both Dr. Tarvin and Dr. Bilderback recognized that Wright suffered from a back injury as a result of the accident, and that injury was superimposed upon a severe congenital back condition that resulted from degenerative disc disease and scoliosis.
 

 |flDr. Gleason, who treated Wright from November 14, 2002, to December 12, 2009, addressed Wright’s initial presentation as follows:
 

 Q. What was your impression of his condition when you first saw him?
 

 A. Chronic back syndrome, degenerative scoliosis and spondylosis.
 

 
 *968
 
 Q. The degenerative scoliosis and spondylosis, these are conditions which are degenerative in nature; do you agree?
 

 A. Yes, the scoliosis is congenital; the spondylosis is a wear-and-tear process.
 

 Dr. Gleason opined that Wright’s current ailments are a result of his scoliosis and spondylosis, and not the work-related accident.
 

 The WCJ considered the medical records and weighed the credibility of the sole witness in this case, Wright. In his reasons for judgment, the WCJ noted his concerns with Wright’s demeanor in court, along with his refusal to cooperate during the October 25,1999, FCE:
 

 [Wright] provided less than maximum voluntary effort and inappropriate pain behavior during the FCE.... [Wright] reported inapproriate pain levels of 9 and 10 during the evaluation. [Wright] was instructed that a level 10 requires immediate medical attention. [Wright] produced 4 out of 5 applicable Waddell signs, where 3 out of 5 positive signs are considered to be indicative of symptom exaggeration.
 

 Additionally, the WCJ was concerned about Wright’s three-year hiatus in treatment following this FCE. For those reasons, the WCJ found that Wright reached full recovery for the injuries he sustained in the accident at some point after the October 5, 2009, FCE.
 

 After reviewing the record before us, we find the WCJ was not erroneous in determining that Wright failed to bear the burden of proof that |inhis current condition was aggravated by the work-related accident. Further, there is insufficient medical evidence to establish a reasonable possibility of causal connection between Wright’s current disability and his work-related accident. It is clear that Wright had underlying health conditions prior to the accident. Therefore, these two assignments are without merit.
 

 CONCLUSION
 

 For the reasons discussed above, we affirm the WCJ’s judgment. All costs of this appeal are assessed to claimant, Robert Wright.
 

 AFFIRMED.