STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 0420

RACHEL PHILLIPS

VERSUS

KIRKLAND'S CORPORATION

Judgment rendered: **FEB 1 8 2020**

* * * * *

On Appeal from the
Office of Workers' Compensation, District 9
State of Louisiana
No. 17-02361

The Honorable Elizabeth C. Lanier, Workers' Compensation Judge Presiding

* * * * *

<table>
<tr><td>Charlsey Wolff<br>Michael W. Margiotta, Jr.<br>Metairie, Louisiana</td><td>Attorneys for Plaintiff/Appellant<br>Rachel Phillips</td></tr>
<tr><td>Stephen W. Brooks, Jr.<br>Richard J. Voelker<br>Erzsebet M. Pifko<br>Covington, Louisiana</td><td>Attorneys for Defendant/Appellee<br>Kirkland's Corporation</td></tr>
</table>

* * * * *

**BEFORE: McCLENDON, WELCH, AND HOLDRIDGE, JJ.**

**HOLDRIDGE, J.**

In this workers' compensation action, the plaintiff, Rachel Phillips, appeals a judgment of the Office of Workers' Compensation (OWC) dismissing her claim for workers' compensation benefits with prejudice. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Phillips was employed by Kirkland's Corporation as a store manager. On September 6, 2016, Dr. Kirk Dantin, her primary care physician, examined Ms. Phillips because she had pain in her left shoulder. Ms. Phillips told Dr. Dantin that she had experienced pain in her left shoulder for longer than six months. Dr. Dantin prescribed Ms. Phillips anti-inflammatory medication and ordered physical therapy; however, she did not go. Ms. Phillips saw Dr. Dantin again on November 15, 2016. Due to Ms. Phillips' restricted range of motion in her left shoulder, Dr. Dantin diagnosed her condition as a frozen shoulder[1] and ordered an MRI.

The next day, on November 16, 2016, Ms. Phillips allegedly injured her left shoulder in the course and scope of her employment when attempting to stop a large mirror from falling. Following her accident, Ms. Phillips followed Kirkland's accident reporting protocol and filled out an incident report and contacted Kirkland's thirty-party administrator, CorVel Corporation, to speak to a nurse. The nurse instructed Ms. Phillips to seek medical attention and scheduled her an appointment that day with Dr. Dantin. After examining Ms. Phillips, Dr. Dantin determined that her left shoulder remained frozen and that she was suffering from a pre-existing condition. Therefore, Dr. Dantin ordered that Ms.

---

[1] A frozen shoulder is an idiopathic, painful limitation of both active and passive shoulder movements that results in a comprehensive restriction of the glenohumeral joint. Chambler AF & Carr AJ: *The role of surgery in frozen shoulder.* J Bone Joint Surg. Br. 2003; 85(6):789-795. PubMed Article: http://www.ncbi.nlm.nih.gov/.

2

Phillips have an MRI on her left shoulder, "as previously scheduled." Dr. Dantin gave Ms. Phillips a sling for her shoulder and limited her to light-duty at work if Kirkland's could accommodate her. On November 17, 2017, Ms. Phillips returned to work at Kirkland's on light-duty.

Thereafter, on November 22, 2016, Ms. Phillips had an MRI on her left shoulder; however, the MRI was deficient. On December 7, 2016, Ms. Phillips saw Dr. Dantin again because she had pain radiating up to her neck causing severe headaches. Dr. Dantin referred her to Dr. Geoffrey P. Stone, an orthopedic surgeon, whom she saw on December 8, 2017. Dr. Stone recommended that she no longer wear the sling and her headaches resolved; however, the pain in her left shoulder continued. Therefore, Dr. Stone placed Ms. Phillips on light-duty at work. After this appointment, Ms. Phillips stopped working at Kirkland's because they could not accommodate her.

Ms. Phillips was notified on December 19, 2016 by Dr. Stone's office that her workers' compensation claim was denied. On January 3, 2017, Ms. Phillips returned to Dr. Stone's office wherein he ordered another MRI. The MRI revealed that Ms. Phillips' left shoulder remained frozen and that she had an acute rotator cuff tear. Therefore, Dr. Stone injected Ms. Phillips left shoulder with a corticosteroid to help her re-gain motion and ordered physical therapy. On January 10, 2017, Ms. Phillips signed a letter from Kirkland's that approved her request for a temporary light-duty position. Thereafter, on February 16, 2017, Ms. Phillips saw Dr. Stone again. Although Dr. Stone noted that Ms. Phillips needed surgery on her left shoulder, he released her to work full duty without any restrictions. Such a release was not Dr. Stone's normal practice under these circumstances. Dr. Stone did not document the reason for release, but his recollection was that Ms.

3

Phillips was concerned about losing her job if she did not return to work on full duty.

On February 21, 2017, Ms. Phillips was provided a Corrective Action Form by her employer for fraud, a violation of a company policy, and was terminated from her employment with Kirkland's.[2] On April 17, 2017, Ms. Phillips filed a disputed claim for compensation (disputed claim) with the OWC for surgery, penalties, attorney fees, and interest. The disputed claim indicated that Ms. Phillips received medical attention from Dr. Dantin and Dr. Stone. Ms. Phillips averred as bona-fide disputes: no wage benefits had been paid; shoulder surgery was recommended by Dr. Stone; and her entitlement to penalties, attorney fees, and judicial interest "due to insurer/employer's unreasonable accusation of fraud, failure to timely pay ... failure to authorize medical treatment, failure to timely pay out-of-pocket costs, failure to timely pay for related treatment, failure to authorize choice of physician."

The OWC held a two-day trial on August 21, 2018 and September 12, 2018. Several witnesses, including former employees of Kirkland's and former employees of CorVel Corporation, testified at trial, as well as Ms. Phillips. Following the trial, the OWC rendered its judgment on November 27, 2018, dismissing Ms. Phillips claim with prejudice. The OWC determined that Ms. Phillips did not meet her burden of proof by a preponderance of the evidence to establish that her left shoulder condition was casually related to the incident at Kirkland's on November 16, 2016. Specifically, the OWC determined that "because the nature of [Ms. Phillips] pre[-]existing condition was so extensive [the OWC could not] find [that Ms. Phillips] met her burden of proof that [it] was more likely than not caused by [the] mirror [that fell on November 16, 2016.]"

---

[2] Although the Corrective Action form was dated February 16, 2017, Kirkland's did not give it to Ms. Phillips until February 21, 2016.

4

Therefore, the OWC denied Ms. Phillips claim for medical treatment, indemnity benefits, reimbursement for medical expenses, and penalties and attorney fees.[3] In its reasons, the OWC stated that the transcript would stand as the OWC's judgment and reasons for judgment.

On April 5, 2019 this court *ex proprio motu* issued a rule to show cause why the appeal should or should not be dismissed. The grounds for the show cause was that although the appeal purportedly was taken from a judgment rendered on November 27, 2018, the record contained no such judgment but only written reasons for judgment filed on that date. In response to the rule to show cause, the record was supplemented with a final judgment signed on November 30, 2018. Ms. Phillips devolutively appealed the November 30, 2018 judgment.

## STANDARD OF REVIEW

When addressing legal issues, the appellate court gives no special weight to the findings of the OWC, but exercises its constitutional duty to review questions of law *de novo*, after which it renders judgment on the record. **Louisiana Workers' Compensation Corp. v. Landry**, 2011-1973 (La. App. 1 Cir. 5/2/12), 92 So.3d 1018, 1021, writ denied, 2012-1179 (La. 9/14/12), 99 So.3d 34. Conversely, the OWC's factual findings are subject to the manifest error standard of review; therefore, in order for a reviewing court to reverse the OWC's factual findings, it must find that a reasonable factual basis does not exist and the record establishes that the factual findings are clearly wrong. **Hamilton v. GCA Services Group, Inc.**, 2017-1072 (La. App. 1 Cir. 2/21/18), 243 So.3d 51, 54. In applying the manifest error-clearly wrong standard, the appellate court must determine whether the fact finder's conclusions are reasonable, not whether the trier of fact

---

[3] We note that the OWC determined that Ms. Phillips was not guilty of fraud, a violation of La. R.S. 23:1208. However, this issue is not before us on appeal.

5

was right or wrong. **Clifford v. OLOL Regional Medical Center**, 2018-1483 (La. App. 1 Cir. 5/31/19), 277 So.3d 1210, 1213.

However, where one or more legal errors on the part of the OWC interdicts the fact-finding process, and the record is otherwise complete, the reviewing court should make an independent *de novo* review of the evidence, giving no deference to the OWC's factual findings, and render judgment. **Truitt v. Temp Staffers**, 2004-0590 (La. App. 1 Cir. 4/6/05), 915 So.2d 786, 792-93, writ denied, 2005-1162 (La. 6/24/05), 904 So.2d 742.

## APPLICABLE LAW

The Workers' Compensation Act provides coverage to a worker for personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031(A). A worker must prove the chain of causation required by the workers' compensation statutory scheme. He must establish by a preponderance of the evidence that the accident was work-related, that the accident caused the injury, and that the injury caused the disability. **Namias v. Sunbelt Innovative Plastics, LLC**, 2015-1380 (La. App. 1 Cir. 2/24/16), 190 So.3d 745, 752, writ denied, 2016-0482 (La. 5/2/16), 212 So.3d 1168. Initially, a workers' compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. **Holiday v. Borden Chemical**, 508 So.2d 1381, 1383 (La. 1987); **Harrison v. Baldwin Motors**, 2003-2682 (La. App. 1 Cir. 11/3/04), 889 So.2d 313, 316, writ denied, 2005-0249 (La. 4/1/05), 897 So.2d 609. Next, he must establish a causal connection between the accident and the resulting disability by a preponderance of the evidence. **West v. Bayou Vista Manor, Inc.**, 371 So.2d 1146, 1147 (La. 1979). Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the

6

fact finder based on all credible evidence. **Welborn v. Thompson Const.**, 2015-1217 (La. App. 1 Cir. 2/26/16), 191 So.3d 1086, 1088.

Even if the employee suffered from a pre-existing medical condition, he may still meet his burden of proof of causation if he proves that the reported accident aggravated, accelerated, or combined with the pre-existing condition to produce a compensable disability. **Peveto v. WHC Contractors**, 93-1402 (La. 1/14/94), 630 So.2d 689, 691. He may be aided in meeting the foregoing burden by a presumption of causation if he can prove (1) that he was in good health prior to the accident at issue, (2) that subsequent to the accident, symptoms of the alleged injury appeared and continuously manifested themselves afterward, and (3) through evidence, either medical, circumstantial, or common knowledge, a reasonable possibility of causation between the accident and the claimed injury. **Wright v. Town of Oil City**, 46,247 (La. App. 2 Cir. 5/18/11), 71 So.3d 962, 967.

## DISCUSSION

In her first assignment of error, Ms. Phillips argues that the OWC erred in finding that she did not meet her burden of proof by a preponderance of the evidence to establish that she suffered an injury to her left shoulder on November 16, 2016, and that her left shoulder symptoms, including her rotator cuff tear, were not causally related to her work accident. Similarly, in her second assignment of error, Ms. Phillips argues that the OWC erred in failing to apply the presumption of causation. Since these two assignments of error are interrelated, we will discuss them together. **Wright v. Town of Oil City**, 46,247 (La. App. 2 Cir. 5/18/11), 71 So.3d 962, 966.

7

The record establishes that both parties agree that Ms. Phillips had an accident[4] at work on November 16, 2016. However, the parties dispute whether Ms. Phillips sustained an injury[5] from that accident. Kirkland's argues that the November 16, 2016, accident was not a causal factor in Ms. Phillips' left shoulder rotator cuff tear, but rather, it was caused by Ms. Phillips "significant pre-existing shoulder problems." Ms. Phillips counters that despite her pre-existing shoulder condition, her accident on November 16, 2016 contributed to, aggravated, or accelerated her left shoulder injury.

In support of her argument that she suffered an injury on November 16, 2016, Ms. Phillips submitted several exhibits at trial, including her medical records and the depositions of her treating physicians, Dr. Dantin and Dr. Stone. In his deposition, Dr. Dantin stated that at Ms. Phillips September 6, 2016 appointment, she had full range of motion in her left shoulder. However, Ms. Phillips told Dr. Dantin that she had experienced pain in her left shoulder for "greater than six months." Therefore, Dr. Dantin ordered Ms. Phillips to attend physical therapy for her left shoulder; however, Ms. Phillips did not go. Approximately two months later, Ms. Phillips saw Dr. Dantin on November 15, 2016, the day prior to her accident. Dr. Dantin testified that at this appointment, Ms. Phillips' range of motion was restricted severely, as she could not move her left shoulder, because it was frozen. Dr. Dantin testified that Ms. Phillips had internal derangement in her left shoulder, which "means [he] expected something to be torn ... whether it's a ligament or cartilage." Dr. Dantin further testified that when he examined Ms.

---

[4] For purposes of workers' compensation, an "accident" is statutorily defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1).

[5] For purposes of workers' compensation, an "injury" is defined as including "only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom[,]" as opposed to other forms of disease from other causes. La. R.S. 23:1021(8)(a).

Phillips the next day after her accident, her left shoulder remained frozen. According to Dr. Dantin, he could not tell more probably than not what additional injury Ms. Phillips may have suffered from her accident.

Dr. Stone also provided testimony regarding Ms. Phillips' left shoulder injury. In his deposition, Dr. Stone testified that when he first examined Ms. Phillips on December 8, 2016, her left shoulder was frozen. Dr. Stone testified that Ms. Phillips did not provide him with a history of the pain related to her left shoulder. It was not until Dr. Stone was deposed on August 14, 2018, that he became aware that Ms. Phillips had previously seen Dr. Dantin and that she had any pre-existing problems to her left shoulder prior to November 16, 2016. When asked if Dr. Stone believed more probably than not that Ms. Phillips had a rotator cuff tear prior to November 16, 2016, he consistently gave conflicting answers throughout his deposition. Although Dr. Stone stated that he could attribute Ms. Phillips' rotator cuff tear to her accident on November 16, 2016, he also stated that he could not rule out the possibility that the rotator cuff tear to her left shoulder existed prior to November 16, 2016.

In further support of her argument, two former Kirkland's employees testified at trial on behalf of Ms. Phillips. Both witnesses were employed at Kirkland's in 2016 with Ms. Phillips. Both witnesses testified that they were aware that Ms. Phillips had shoulder problems prior to the November 16, 2016 incident because Ms. Phillips was unable to lift items due to her shoulder.

After reviewing the record, we have determined that the OWC was not manifestly erroneous in finding that Ms. Phillips did not meet her burden of proof to establish that her rotator cuff tear was caused by the incident on November 16, 2016. Ms. Phillips' medical records, including the fact that she did not have an MRI until after her accident, and the medical testimony provided by her treating

9

physicians leaves the probability of causation equally balanced. If the evidence leaves the probabilities of causation equally balanced, the worker has failed to carry his or her burden of proof. Magee v. Abek, Inc., 2004-2554 (La. App. 1 Cir. 4/28/06), 934 So.2d 800, 807, writ denied, 2006-1876 (La. 10/27/06), 939 So.2d 1287. Based on the entirety of Ms. Phillips' medical history, the conflicting testimony given by Dr. Stone, and the fact that Ms. Phillips' pre-existing condition was so extensive, we find no manifest error in the OWC's finding that Ms. Phillips failed to carry her burden of proof that her left shoulder injury was caused by the incident on November 16, 2016. See Magee, 934 So.2d 811. Therefore, we cannot find that the OWC erred in finding that Ms. Phillips did not carry her burden of proving by a preponderance of the evidence that she suffered an injury within the course and scope of her employment on November 16, 2016. La. R.S. 23:1031(A); see Peters v. Harmsen, 2003-1296 (La. App. 1 Cir. 4/2/04), 879 So.2d 157, 162.

Additionally, we have determined that Ms. Phillips is not entitled to the presumption of causation. The medical or circumstantial evidence reveals that Ms. Phillips had an extensive history of left shoulder pain before the incident on November 16, 2016. Therefore, we find that the OWC's failure to apply the presumption of causation analysis to Ms. Phillips' claim because she was unable to prove that before the incident she did not have disabling symptoms to her left shoulder was not manifestly erroneous. See Magee, 934 So.2d at 810.

Accordingly, based on the evidence in this record, the OWC was not incorrect in finding that Ms. Phillips failed to meet her burden of proving that the November 16, 2016 accident caused her injury, as she had a pre-existing condition to her left shoulder prior to her accident. As the OWC's finding on the causation issue was expressly based upon its determination of the credibility of the witnesses

and medical testimony provided, it is entitled to great deference, and we must conclude that it is not manifestly erroneous. See **Guy v. Kelps & Will Prop Shop**, 2018-0956 (La. App. 1 Cir. 2/26/19). 272 So.3d 570, 577; **Meneses v. IFCO Systems, Inc.**, 2004-1686 (La. App. 1 Cir. 9/23/05), 923 So.2d 111, 117. Therefore, Ms. Phillips' first and second assignments of error are without merit.[6]

## CONCLUSION

The judgment of the Office of Workers' Compensation is affirmed. All costs of this appeal are assessed to the plaintiff, Rachel Phillips.

**AFFIRMED.**

---

[6] Because we find that the OWC did not err in its finding concerning causation of Ms. Phillips' injury, we pretermit discussion of Ms. Phillips' remaining assignments of error.

11